(Decided 21st January, 1881.)

GEORGE W. MACKENZIE, and others *vs.* EMMA REN-
SHAW, by her next friend WILLIAM RENSHAW.

*Practice in Ejectment under the Act of* 1872, *ch.* 346.

An action in ejectment was brought the 5th March, 1879, by the ap-
pellee against the appellants for certain lots of land described in the
declaration, situate in Baltimore County, unoccupied, unimproved
and vacant. To the declaration was attached a notice, signed by the
plaintiff's attorney, addressed to the defendants, giving them notice
of the suit, and requiring them to appear in Court in person or by
attorney on the second Monday of March, 1879, to make defence to
the action according to law, "otherwise judgment will be recovered
against you for the premises described in the declaration, and you
will be turned out of possession." All the defendants resided in the
City of Baltimore. Three copies of the declaration and of this notice,
one for each of the defendants, were issued by the clerk under seal,
and placed in the hands of the sheriff of Baltimore County, who
made return thereto: "Not found, no tenant in possession, copies
set up on the premises." On the 15th September, 1879, at the fol-
lowing September term of the Court, none of the defendants having
appeared, the Court rendered this judgment in the case: "Judg-
ment for the plaintiff by default for property described in *narr.* one
cent damages and costs." On the 19th September, the defendants
appeared by counsel, and moved to strike out the judgment, alleg-
ing, they had received no notice whatever of the suit until they
saw by the newspapers a day or two before, that the judgment had
been recovered against them, and assigning among others as a

reason that it should be struck out, that it was irregularly obtained and was contrary to law. HELD:

That, under the Act of 1872, ch. 346, the judgment was entered without authority and should be struck out.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY, ROBINSON and IRVING, J.

*William H. Cowan*, for the appellants.

Since the enactment of the Acts of 1870, ch. 420, and of 1872, ch. 346, the whole machinery of the action of ejectment has been changed. The Act of 1870, required a writ to issue to bring the defendant or defendants into Court. The Act of 1872, says what the writ shall be, or what the notice to the claimant or claimants shall be, and how it shall be served. Like all other matters involving rights of person and property, notice to parties interested is necessary before a Court can entertain jurisdiction of either person or property. Art. 23, Declaration of Rights of Maryland; Art. V, Constitution of the United States, contain similar announcements of a principle of common right to secure individual right against usurpation. The former uses the words "by the law of the land," and the latter, "without due process of law," which are equivalent in meaning. Due process of law, and law of the land, require that a party shall have notice of an action against him. Mr. Broom says service of the writ is necessary to give jurisdiction. *Broom's Common Law*, 167; *Cooley's Constitutional Limit.*, 353, 357; *Dartmouth College vs. Woodward*, 4 *Wheat.*, 519; *Broom's Constitutional Law*, 228; *Westervelt vs. Gregg*, 12

*N. Y.*, 209; *Bank of Columbia vs. Okely,* 4 *Wheat.*, 235; *Vanzant vs. Waddell,* 2 *Yerg.*, 260.

Due process of law, or law of the land, is such legal action as is right and proper to protect and secure person and property, and as decides, after a fair trial, not after an *ex parte* hearing, without an opportunity to the other side to be heard. In summing up the result of his investigations on the subject of due process of law, Mr. Cooley (page 356,) says: "The principles then, upon which the process is based, are to determine whether it is 'due process' or not, and not any considerations of mere form. Administrative and remedial process may change from time to time, but only with due regard to the land-marks established for the protection of the citizen. When the government, by its established agencies, inter-feres with the title to one's property, or with his independent enjoyment of it, and its action is called in question, &c." See also *Lentz vs. Charlton,* 23 *Wis.,* 478.

It may be said, the law has provided a mode of notice in this peculiar action, and that provision says what the law of the land is; and the pursuing of that course, is proceeding in the due course of the law. Mr. Cooley, at pages 402, 403, 404, &c., discusses the subject of notice by process from the Courts. He uses the following language: "Suits at the common law, however, proceed against the parties whose interests are sought to be affected; and only those persons are concluded by the adjudication, who are served with the process, or who voluntarily appear." No doubt on this being required to a proceeding that can be termed, according to the law of the land. In the note (2) to page 403 of said book, the Judge says: "Notice of some kind, is the vital breath that animates judicial jurisdiction over the person; it is the primary element of the application of the judicatory power; it is of the essence of the cause; without it, there cannot be parties, and without parties, there may be the

form of a sentence, but no judgment obligating the person." It will not satisfy the demands of justice in due course of law to assert—Oh! something was done equivalent to notice; nothing is not an equivalent of anything; nobody ever saw or heard of anything like notice having been given in this case. Nor does any person know anything of it, except what the return says. No actual process was served on the defendant; nor was actual notice given to him in any way. The statutory notice is insufficient if literally followed, unless in the case of a party beyond legal process, and then the Court exercises its power over what is within its jurisdiction. What is known as *substituted service,* is resorted to, in some instances, to obtain jurisdiction. That is not applicable to a case of this kind. On the principle of substituted service—see Cooley at pages 403, 404, and notes. At page 404, Mr. Cooley says: "But such notice is restricted in its legal effect, and cannot be made available for all purposes. It will enable the Court to give effect to the proceeding so far as it is one. *in rem,* but when the *res* is disposed of, the authority of the Court ceases."

Ejectment is a mixed action. The damages for the trespass are rendered *in personam;* for the recovery of the property the judgment is *in rem.* The judgment cannot be simply for the recovery of the thing in controversy. A trespass must be proved or be assumed, else there is no case. The judgment against the defendant is that he committed the trespass and ejectment. No damages can be given unless the defendant be summoned, and no judgment can be entered against the defendant unless some damages be given. No costs can be charged against a defendant in a proceeding purely *in rem.* The costs are in the discretion of the Court, in the now ejectment form of action, by the express language of the Act of 1872. The Court could not exercise a discretion in a case in which it had no power. In the judicial history

of England or America, no authority, deserving the name, can be found to support a judgment *in personam*, against a party who was not summoned or notified of the pendency of the action against him.    The so frequently quoted and universally prevailing principle of "due course of law," "law of the land" forbid such injustice. Right, reason and justice, forbid such a procedure as tyrannical and oppressive.

A judgment by default against the *casual ejector*, might be stricken out after the term.    It is an exception to the rule that a judgment will not be stricken out after the term at which it has been entered.    *Klinefelter's Lessee vs. Carey*, 3 *G. & J.*, 349; *Dennis' Lessee vs. Kelso*, 28 *Md.*, 333; *Alex. British Statutes*, 212.

The judgment by default settles certain things, as even the jurisdiction when a party has been summoned; but where the record shows that jurisdiction of the person did not attach, no judgment can be given either by default or final.    The reason why the judgment against the casual ejector will be stricken out if no notice was given to the real defendant, was because fiction did not altogether supplant fact; and the Court would not raise its arm merely to beat the air.

*John P. Poe* and *E. O. Hinkley*, for the appellee.

There are no merits in the application of the appellants. The title of the appellee is confessedly the legal title to the premises, while the only possible claim held by the appellants was contingent upon the payment of the purchase money of $6000 on or before the 25th April, 1878, and interest thereon semi-annually in the meantime.    The interest was in arrears from the 25th April, 1877, and the appellants did not pay the purchase money on or before the 25th April, 1878, but were in arrears for nearly eleven months when the ejectment was brought.    If the appellants had or shall have any remedy (which is, how-

ever, not admitted,) it can only be sought in a Court of equity, and then only, upon paying the principal, interest and costs due to the appellee. This they have never tendered.

The return of the sheriff shows a strict compliance with the statute. *Abell, Garnishee vs. Simon,* 49 *Md.,* 318.

The judgment by default, conclusively establishes the right of the plaintiff to recover, and the jurisdiction of the Court, and hence establishes her legal title, which the the declaration asserts. *Cooper vs. Roche,* 36 *Md.,* 563; *Green vs. Hamilton,* 16 *Md.,* 317; *Heffner vs. Lynch,* 21 *Md.,* 555, 6.

MILLER, J., delivered the opinion of the Court.

This appeal is from the overruling of a motion to strike out a judgment rendered in an ejectment suit. The action was brought in the Circuit Court for Baltimore County, on the 5th of March, 1879, by the appellee, Emma Renshaw, by her husband and next friend, William Renshaw, against the appellants, George W. MacKenzie, trustee, Howell Downing and Elizabeth Downing, his wife, for certain lots of land described in the declaration, situated in Baltimore County, unoccupied, unimproved and vacant.

The suit was, of course, instituted since the passage of the Act of 1872, ch. 346, which has made important changes in the proceedings and practice in actions of ejectment in this State. To the declaration was attached a notice, signed by the plaintiff's attorney, addressed to the defendants, giving them notice of the suit, and requiring them to appear in Court in person or by attorney on the second Monday of March, 1879, to make defence to the action according to law, "otherwise judgment will be recovered against you for the premises described in the declaration, and you will be turned out of possession." All the

defendants resided in the City of Baltimore. Three copies of the declaration and of this notice, one for each of the defendants, were issued by the clerk under seal, and placed in the hands of the sheriff of Baltimore County, who made return thereto: "Not found, no tenant in possession, copies set up on the premises." On the 15th of September, 1879, at the following September term of the Court, none of the defendants having appeared, the Court rendered this judgment in the case: "Judgment for the plaintiff by default for property described in *narr.*, one cent damages and costs." Promptly thereafter, on the 19th of September, the defendants appeared by counsel and moved to strike out this judgment, alleging they had received no notice whatever of the suit until they saw it published in the papers a day or two before, that this judgment had been recovered against them, and assigning among others, as a reason why it should be struck out, that it was irregularly obtained and is contrary to law. This motion was overruled, and hence this appeal.

The construction and effect of the Act of 1872, are very important questions, but all that we propose to decide now, is whether the judgment rendered in this case was authorized by law and duly entered. The Act in question, after providing that the action of ejectment shall be commenced by filing a declaration, in which the real claimant shall be named as plaintiff, and the tenant in possession, or the party claiming adversely shall be defendant, declares that "a copy of the declaration with a written notice of the suit addressed to the defendant, shall be served on each of the defendants, *or the land,* if no person be in actual possession; that to this declaration, the defendant or any other person with leave of the Court, may appear and plead not guilty, which plea shall be held a confession of the possession and ejectment, and shall only put in issue the title to the premises, and right of possession, and the amount of damages claimed

by the plaintiff," (which in this case was $6000,) "but *any* defendant may *refuse* to appear, or file a *disclaimer* of title to the land or any part thereof, in *which case* the plaintiff shall recover judgment against the defendant so *disclaiming* or *refusing* to defend for the land or so much thereof as shall not be defended, but the costs shall be subject to the discretion of the Court, *and the trial shall then proceed* against the party making defence, under the rules and practice of the Court as the same existed prior to the year 1870, except so far as the same may be changed by this Act." And it is then provided that the plaintiff " shall also recover as damages in this action, the *mesne profits* and damages sustained by him, and caused by the ejectment and detention of the premises, up to the time of the determination of the case."

It is manifest that the Court below in rendering the judgment complained of in the present case, assumed that the power to render it was given by this statute, and that they acted under it in ordering the judgment to be entered. But in our opinion the law confers no such power in the case of a simple *failure* of all the defendants to appear. By the plain reading of the Act, the judgment therein mentioned, in favor of the plaintiff for the land, or so much thereof as shall not be defended, can be given only in cases where one or more of several defendants, after process has been duly served, *refuse* to appear or *file a disclaimer* of title, and where another or others have appeared and made defence, so that as against them the trial can proceed. The law does not declare that such a judgment may be rendered in favor of the plaintiff upon the mere failure of the sole or all of the defendants to appear, and we cannot place any such construction upon it. Nor can we treat this as an authorized judgment by default. The Act makes no provision for such a judgment, and this omission may well have been by design on

the part of the Legislature. Under the old practice where the tenant in possession failed to appear in place of the casual ejector, according to the exigency of the notice, a judgment by default was entered against the casual ejector, and thereupon a writ of *habere facias* could be issued under which the tenant in possession could be put out, and the lessor of the plaintiff put in possession of the premises. But such a judgment, and indeed any judgment in ejectment under the old practice, was conclusive upon nobody, and when the Legislature by this Act abolished the fictions, and required the real parties in interest to become plaintiffs and defendants in such actions, they may have foreborne, in view of the possibly binding and conclusive effect of such judgment as between the parties, to provide for the case of a judgment by default for want of an appearance, against the sole and only defendants, which would have the effect of a definite and conclusive adjudication against their title. In the English Common Law Procedure Act, (15 & 16 *Vic., ch.* 76,) which also abolished the common law fictions in this action, it is expressly provided that the writ shall be served in the same manner as an ejectment has heretofore been served, or in such manner as the Court or a Judge shall order, and in case of vacant possession by posting a copy thereof upon the door of the dwelling-house, or other conspicuous part of the property, and "in case *no appearance* shall be entered within the time appointed, or if an appearance be entered, but the defence be limited to a part only, the plaintiffs shall be at liberty to sign a judgment that the person whose title is asserted in the writ, shall recover possession *of the land*, or of the part thereof to which the defence does not apply." There is no provision in our Act as to any such judgment where *no appearance* by any of the defendants is entered, and it is not the province of the Courts to supply the omission, especially not in a case like the present where the land being vacant and unim-

proved, · the process was served simply, as the sheriff's return states, by copies being set up on the premises, without showing how, or where on the land they were so set up, and where the defendants had no other notice in fact of the suit. We are, therefore, clearly of opinion this judgment was entered without authority, and the order overruling the motion to strike it out must be reversed. In what we have thus said, we are, of course, to be understood as referring to the ordinary action of ejectment, and not to such an action between landlord and tenant under the statute of 4 *Geo.* 2, *ch.* 28, as modified by the second section of the Act of 1872, ch. 346.

In the course of the argument at bar several other questions in regard to the construction and effect of this Act were discussed, upon which it is not necessary now to express any definite opinion. The law however seems to us defective in some important particulars. Not only is there no provision made for a judgment by default as above stated, similar to that provided by the English Common Law Procedure Act, but there are not the same, nor indeed any proper safeguards in reference to service of process in cases where the lands are wholly vacant, unenclosed and unimproved. There is a large quantity of such land in this State, and a law which provides simply that a copy of the declaration and notice shall be served "*on the land* if no person be in actual possession thereof," and makes such service effective and the judgment in the action conclusive between the parties named in the declaration, seems to us to open wide the door to the infliction of grievous and irreparable wrongs upon owners, who may happen to reside in a different county from that in which the land is situated, or be non-residents of the State. Under the ancient mode of proceeding by ejectment in England peculiar and special formalities were required, and it was necessary that an open and notorious *act* should be done on the property itself, in cases where the

possession was vacant, where the premises were wholly deserted by the tenant and his place of residence unknown, and where the case was not provided for by the statute of 4 *Geo.* 2, *ch.* 28. The mode of proeedure in such cases is pointed out in 2 *Tidd's Practice,* 1200. We do not suggest that any such peculiar formalities should be provided by legislation in this State, but we think something more should be required to give notice to owners or claimants in such cases than the mere service of the declaration *"on the land."*

In the present case the judgment overruling the motion to strike out will be reversed, and the cause remanded in order that the defendants who have now appealed may be allowed to defend the action.

*Judgment reversed, and*
*cause remanded.*

