WILLIAM WALSH, MARGARET A. McKAIG, and others
vs. JANE McINTIRE.

*Ejectment—Adverse possession—Title—Parol gift of Land—*
*Estoppel—Question of Title—Evidence—Ex parte Affi-*
*davits of Deceased persons.*

In an action of ejectment in 1885, where the defence taken was ad-
verse possession for a period exceeding twenty years, the defendant
testified that she was put in possession by the former owner who had
told her to go there and live, and take care of the property, and not
to go away and leave it as Brady had done; that she had lived there
since 1852, and built the house now there; that she paid no rent,
and had paid taxes since 1870; and that the line of enclosures had
never been changed. HELD:

That an instruction asked by the plaintiffs that the defendant had
given no proof legally sufficient to prove title in her, by adverse
possession or otherwise, was erroneously rejected.

No one can acquire title, which is maintainable at law, by parol gift,
followed by actual possession, however long and exclusively con-
tinued.

Where, in an action of ejectment, it appeared there had been a former
suit between one of the plaintiffs and the defendant in respect of
the same property, and she appeared by counsel, who entered into
the consent rule, and afterwards struck out his appearance, and
judgment by default was rendered against the casual ejector, it was
error to refuse the plaintiffs' prayer for an instruction that the de-
fendant was estopped by the prior ejectment proceedings from con-
troverting the right of possession of the plaintiffs to the parcel of
land claimed in that suit "for and during the term of twenty
years,—the demise laid in the declaration;" but an instruction at
the instance of the defendant, that the judgment in the former case
was not conclusive as to the question of title involved in the sub-
sequent case, was proper.

*Ex parte* affidavits of third parties, since dead, in reference to certain
admissions of the defendant, used on a motion to strike out a judg-
ment by default in an ejectment suit, are not admissible in evidence

in a subsequent action of ejectment between the same parties and for the same parcel of land.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the Court's opinion.

*Second Exception.*—The plaintiffs offered five prayers, the first of which, as follows, the Court (HOFFMAN and SYESTER J.,) refused as offered, but granted as modified:

1. That as both plaintiffs and defendant claim title under David Shriver, they are both estopped from denying his title.

2. That the defendant has given no proof legally sufficient to prove title in her by adverse possession, or otherwise.

3. If the jury find the death of David Shriver, intestate, and that Jacob S. Shriver, Wm. Shriver and Elizabeth Stewart were his heirs, and that Wm. Shriver made the deed to Jacob S. Shriver, offered in evidence, and that Jacob S. Shriver and Elizabeth Stewart made the deeds to Wm. Walsh, offered in evidence, and that those deeds include the land in controversy, they vested the legal title to said land in controversy in said Walsh.

4. If the jury find the facts in paragraph No. 3, and that Wm. Walsh executed the deed to the canal company, offered in evidence, and said company executed the mortgage to Wm. Walsh and Thomas J. McKaig, and the same included said land, and that said McKaig afterwards died and left the will offered in evidence, and the plaintiffs, other than Walsh, are his devisees, then their verdict must be for the plaintiffs.

Plaintiffs' first prayer as modified by the Court and granted, is as follows:

1. That as both plaintiffs and defendant claim title under David Shriver, they are both estopped from denying his title.

3. If the jury find the death of David Shriver intestate, and that Jacob S. Shriver, Wm. Shriver and Elizabeth Stewart were his heirs, and that Wm. Shriver made the deed to Jacob S. Shriver, offered in evidence, and that Jacob S. Shriver and Elizabeth Stewart made the deeds to William Walsh, offered in evidence, and that those deeds include the land in controversy, they vested the legal title to said land in controversy in said Walsh, but if the jury find the facts set out in the Court's first proposition, then the title acquired under the said deeds did not clothe the plaintiffs with title as against the defendant for the land so held by her.

4. If the jury find the facts in paragraph No. 3, and that Wm. Walsh executed the deed to the canal company, offered in evidence, and said company executed the mortgage to Wm. Walsh and Thos. J. McKaig, and the same included said land, and that said McKaig afterwards died and left the will, offered in evidence, and the plaintiffs, other than Walsh, are his devisees, then their verdict must be for the plaintiffs, provided the jury shall find the facts set out in the Court's second or alternative instruction.

The Court rejected the plaintiffs' second, third, fourth and fifth prayers as follows :

2. That if the jury find from the evidence that the defendant entered into possession of the premises in controversy by the permission or assent of David Shriver, then the possession of the defendant was not hostile and adverse in its inception, and never could ripen into title, unless she notified or brought home to the knowledge of David Shriver, his heirs or assigns, that she was holding adversely under claim of title in her own right, and in hostility to his or their right, and continued so to hold and claim uninterruptedly for twenty years after such notice or knowledge brought home to said David Shriver, his heirs or assigns, and before this suit was brought, and there is no evidence legally sufficient of such notice, or bringing

home to the knowledge of said Shriver, his heirs or assigns, of such holding or claim for twenty years prior to this suit.

3. That if the jury shall find from the evidence in the cause, that the defendant, Jane McIntire, entered upon the land in controversy in this cause by the permission of David Shriver, the ancestor of those under whom the plaintiffs claim, and that said Jane never notified said Shriver or his heirs, or any of them, that she was holding adversely and in hostility to their title, then the defendant cannot set up adversary possession as a defence to this action.

4. That by the proceedings in No. 146 Trials, Oct. Term, 1870, of the Circuit Court for Alleghany County, offered in evidence, the defendant is estopped from controverting the right of possession of William Walsh to the parcel of land claimed in that suit, and recovered therein, for and during the term of twenty years, the demise laid in the declaration.

5. That there is no legally sufficient evidence in the cause of the disseisin of David Shriver, of the land in controversy by the defendant, and if they find he died intestate, and that Wm. Shriver, Jacob S. Shriver and Elizabeth Stewart were his heirs, and that before and at the time of his death they were out of the State, and Elizabeth Stewart was also a *féme covert,* then no possession could be adverse or ripen into title against them while they so continued out of the jurisdiction of this State, and said Elizabeth continued under coverture, and that there is no evidence that William Shriver and Elizabeth Stewart ever came into the State, and no evidence that Jacob Shriver came into the State before the fall of 1867.

The Court itself gave two instructions, to be found in the opinion of this Court.

The Court granted the defendant's second, third, seventh and eighth prayers as follows:

2. That the burden of proof is on the plaintiffs to show that the enclosure of the defendant is within the lines of

the Shriver deeds offered in evidence by them, and under which they claim title.

3. That the plaintiffs must satisfy the jury by testimony in the cause, that the lines of the Shriver deeds under which they claim title, are correctly located on the map, and if the jury are not so satisfied their verdict must be for the defendant.

7. That the proceedings in the case, 146 Trials, to Oct. Term, 1870, are in no manner conclusive of any question of title to the land now in controversy between the parties to this suit.

8. That the proceedings in the case, 146 Trials, to Oct. Term, 1870, are in no manner conclusive of any question of location involved in this cause.

The plaintiffs excepted, and the verdict and judgment being for the defendant, they appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Ferdinand Williams,* and *Daniel R. Magruder,* for the appellants.

The alleged gift was made in 1852. Prior to the Act of 1856, ch. 154, Revised Code, Art. 44, sec. 4, a deed executed and acknowledged, as required by law, with the words in it which the defendant says David Shriver used to her, would not convey the entire title, if any, to the piece of land. Without the word heirs, before the Act of 1856, it was a legal impossibility to convey the entire estate or fee. The words "children," with a warranty to the grantees and his heirs, the words "to have and to hold to him forever," or "to have and to hold to him and his assigns forever," would not convey the fee. There are a few well-defined exceptions which have no relation to the present case. 2 *Blackstone's Com.,* 107; 1 *Sheppard's Touch.,* 101; 4 *Cruise Dig., Tit.* 32, *ch.* 21; 1 *Wash.*

*Real Prop.*, 48; *Wms. Real Prop.*, (144); *Adams vs. Ross*, 30 *N. J. L.*, 505; *Foos vs. Scarf*, 55 *Md.*, 311; *Marritt vs. Disney*, 48 *Md.*, 344; *Sisson vs. Donnelly*, 36 *N. J. L.*, 433.

It is indisputably settled in this State and elsewhere, that adverse possession cannot be originated or based upon any less interest in real estate than the fee simple or the entire title. Upon this pretended gift therefore, it is impossible in law, without overturning what has hitherto been considered foundation principles regarding real property, to base an adverse possession; no matter how long continued or what other features of an adverse character it might have. *Dean vs. Brown*, 23 *Md.*, 11; *Bedell vs. Shaw, et al.*, 59 *N. Y.*, 46; *Harpending vs. Reformed Church*, 16 *Peters*, 445; *Tyler on Ejectment*, 887; *Ricard vs. Williams*, 7 *Wheat.*, 59.

Adverse possession is founded on a disseisin, which means a wrongful entry of a person claiming the fee simple or entire title in defiance of all the world, and an actual ouster of the true owner. Nothing of the kind is shown in this case. The party entered by the consent of the owner; and under a claim, even if valid, or less than the entire title, there could be no disseisin; which is entirely different in law from possession. 9 *Coke R.*, 106; *Coke Lit.*, 153 *b.*

In Maryland and other States, generally where the common law system has prevailed, such gifts are the subject of chancery jurisdiction, and even there only enforced upon the clearest and fullest proof of the gift in all its terms, and large and permanent improvements made on the faith of it, and a consideration of blood or marriage; for even equity will not enforce the performance of a voluntary gift. *Fry on Spec. Perf.*, sec. 64.

To allow a parol gift of land, even in fee, however clearly proved, and the possession following under it, to pass a legal title, would be directly in the face of the com-

mon law, of the Statute of Frauds, and of our Acts of 1715, chap. 47, and 1766, chap. 14, which, as condensed in the Code, prohibit the creation or passing, or taking effect of any estate in land for above seven years, unless conveyed by deed executed, acknowledged and recorded as prescribed. Even a deed executed, but not acknowledged and recorded, is utterly powerless and void of effect to create or pass any interest in lands. The decisions of this Court have given full force and effect to these wise laws, adopted long ago for the security of titles and the prevention of frauds and perjuries (particularly needful where one of the parties to the transaction may be dead), and declared that no acts *in pais* can have any effect to give a LEGAL title to lands beyond the seven years, or any easement or interest therein. *Peter vs. Schley's Lessee,* 3 *H. & J.,* 211 ; *Hays vs. Richardson,* 1 *Gill & J.,* 366 ; *Anderson vs. Critcher,* 11 *Gill & J.,* 450 ; *Carter & Lewis vs. Harlan, et al.,* 6 *Md.,* 20 ; *White, Admr. vs. Combs, Ex.,* 27 *Md.,* 489 ; *Polk vs. Reynolds,* 31 *Md.,* 107.

As a general proposition, wherever the common law prevails, a parol gift of land is wholly invalid and vests no right, legal or equitable, and the possession under it is a mere license or tenancy at will and can never ripen into an adverse possession, unless where some subsequent acts of open and unequivocal disseisin brought home to the knowledge of the owner, have occurred and been continued for the statutory period. The entry under the parol gift in fee being a mere tenancy at will is no disseisin or ouster of the seisin of the owner of the fee, and the continued possession, claiming by virtue of the gift, is in its nature a recognition of the continued existence of the subsisting title in the donor or legal owner, and the claim to hold any estate by gift from the legal owner is a claim to hold in subordination to his legal title, and such a possession never can become adverse. *Clarke vs. McClure,*

10 *Gratt.*, 305; *Jackson vs. Rogers*, 1 *Johns. Cas.*, 34; *Same Case*, 2 *Caines' Cases in Error*, 314; *St. Vincent Asylum vs. Troy*, 76 *N. Y.*, 108; *Rucker vs. Able*, 8 *B. Mon.*, 566; *Collins vs. Johnson*, 57 *Ala.*, 304; *Boykin vs. Smith*, 65 *Ala.*, 294; *Potts vs. Coleman*, 67 *Ala.*, 227, 228; *Alexander vs. Wheeler*, 69 *Ala.*, 332; *White vs. Hapeman*, 43 *Mich.*, 267; *Campau vs. Lafferty*, 50 *Mich.*, 114; *Appleby vs. Obert*, 16 *N. J. L.*, 336.

Where the entry and possession are referable to a contract or permission, the possession cannot be adverse, but will continue, without payment of rent, or acknowledgment of title, to be held under the owner of the land until an open and manifest renunciation and defiance of his title is shown and brought home to his knowledge. There must be a disseisin to start with. *Gwinn vs. Jones' Lessee*, 2 *Gill & J.*, 173; *Waltemeyer vs. Baughman*, 63 *Md.*, 200; *Campbell vs. Shipley*, 41 *Md.*, 81, 97, 98; *Myers, et al. vs. Silljacks*, 58 *Md.*, 319, 327–8; *Worthington, et al. vs. Lee*, 61 *Md.*, 531, 539.

In the cases where our Courts in equity have decreed a title under such gifts it will be found that they have always insisted upon the fullest, clearest and most undoubted proof of the fact and extent of the gift, and that such gift was not purely voluntary, but supported by consideration of marriage, natural duty, enforced by expensive and permanent improvements made on the faith of the gift, encouraged by the donor, long possession and repeated acknowledgment of title in the donee by the donor. *Wingate vs. Dale*, 2 *H. & J.*, 76; *Waltemyer vs. Baughman*, 63 *Md.*, 200; *Dugan, et al. vs. Gittings, et al.*, 3 *Gill*, 138; *Saunders, et ux. vs. Simpson, et ux.*, 2 *H. & J.*, 81; *Haines, et al. vs. Haines, et al.*, 6 *Md.*, 435; *Hardesty vs. Richardson*, 44 *Md.*, 617; *King's Heirs vs. Thompson*, 9 *Peters*, 204; *Hugus vs. Walker*, 2 *Jones*, 173, (12 *Penn.*); *Lester vs. Foxcroft*, 1 *White & Tudor*, *L. C. Equity*, 734.

Possession *per se* evidences only present occupation, and is as consistent with an interest for life, or for years, or at

will, or a mere license, as in fee. There is no conflict between possession in one and title in another, unless it is an adverse possession originating in the disseisin or ouster of the seisin and possession of the owner of the title. *Ricard vs. Williams,* 7 *Wheat.*, 59 ; *La Frombois vs. Jackson,* 8 *Cow.*, 603 ; *Keene vs. Deardon,* 8 *East,* 263 ; *Doe vs. Jackson,* 2 *Dowl. & Ry.*, 523. See also *Kirk, et al. vs. Smith, ex dem.*, 9 *Wheat.*, 241, 288 ; *Bowie vs. O'Neale, et al.*, 5 *H. & J.*, 226.

Under a permissive entry the possession is lawful until the occupant proclaims his independence and sets at defiance the party under whom he entered and all the world. And after he has begun and made known his rebellion, he must continue in that attitude at every point of time for twenty years. If there is any break in the line, if he has lowered his flag at any period or point during the twenty years—the adverse possession, the attitude of hostility in which it must begin and continue—is broken and gone. A new beginning must be made ; another rebellion proclaimed and prosecuted for twenty years. Whatever is said or done—acts or declarations—along the whole line for twenty years is *res gestae*—a part of the process of making or unmaking of the adverse possession. *Thistle vs. Frostburg Coal Co.*, 10 *Md.*, 129, and *Camp vs. Camp*, 5 *Conn.*, 291.

Possession under one cannot be adverse to him. Possession under permission or agreement cannot be adverse. Adverse possession only begins after independence and rebellion made against the party, in allegiance to whose title possession was received. *Buller's N. P.*, 104 ; *Gwynn vs. Jones,* 2 *Gill & J.*, 193 ; *Stump vs. Henry,* 6 *Md.*, 201 ; *Israel vs. Israel,* 30 *Md.*, 125 ; *Campbell vs. Shipley,* 41 *Md.*, 81 ; *Myers vs. Silljacks,* 58 *Md.*, 327–8 ; 8 *Barn. & Cr.*, 717 ; *Foulke vs. Bond,* 41 *N. J. L.*, 528 ; *Leport vs. Todd,* 32 *N. J. L.*, 124.

If the facts necessary in law to constitute adverse possession existed, it was clearly the duty of the Court to make

Walsh, *et al. vs.* McIntire.

provision for the entry of the owner in 1869, of which there was ample proof in the case. This entry would have interrupted and broken up the necessary continuity of the adverse possession, if there had been any. It was not necessary to break up the "occupancy." 1 *Gill*, 430 ; 23 *Md.*, 64 ; 1 *H. & McH.*, 89 ; 1 *H. & McH.*, 281 ; 7 *Mees. & W.*, 226 ; *Turner vs. Bennett*, 9 *Mees. & W.*, 643 ; *Ball vs. Cullimore*, 2 *Cromp. M. & R.*, 120.

The lessor and tenant in possession are the real parties. The tenant is served with the process prescribed by law. He may defend or not, as he likes. The judgment on verdict if he defends, or by default if he does not defend, is as binding as any other judgment on verdict or by default. It concludes the right to the possession for the time laid in the demise. That is the matter in issue, and that the judgment determines. It does not embrace or conclude the whole title, even as between the parties, because the issue was only the present possessory right. But this right of possession for the term of the demise it conclusively settles until reversed or somehow annulled. The English cases all decide the judgment on verdict or by default to be conclusive if pleaded by way of estoppel, and whether in a *second ejectment* or trespass for mesne profits. 2 *Taylor Ev.*, sec. 1500, *and cases cited ; Buller N. P.*, 87, 232; *Doe, dem. Strode vs. Seaton*, 2 *Cromp. M. & Ros.*, 728 ; *Doe vs. Wellsman*, 2 *Exch.*, 368 ; *Doe vs. Huddart*, 2 *Cromp. M. & Ros.*, 316 ; *Mathew vs. Osborn*, 13 *C. B.*, 918 ; *Wilkinson vs. Kirby*, 15 *C. B.*, 430 ; *Doe vs. Challis*, 17 *Q. B. N. S.*, 165 ; *Chirac vs. Reinicker*, 11 *Wheat.*, 297; 1 *Johns. Cas.*, 281 ; 11 *Johns. R.*, 405, 461 ; 5 *Ohio Rep.*, 509 ; *Ridgely vs. Ogle & Leonard*, 4 *H. & McH.*, 123 ; *Hammond's Lessee vs. Inloes*, 4 *Md.*, 318; *Carroll vs. Norwood*, 5 *Harr. & J.*, 173.

A case is not to be left to the jury because there is some evidence of the gift, as in other cases, but in this class of cases the question is as to the character of the proof, because

it is offered for the purpose of creating title to land by parol, and must contain the requirements above mentioned, as well as certain other elements, or it will not suffice to create such a title, and the Court must judge of this. *Sower vs. Weaver,* 78 *Pa.,* 443; *Hart vs. Carroll,* 85 *Pa.,* 510; *Allison vs. Burns,* 107 *Pa.,* 50; *Erie & W. R. R. Co. vs. Knowles,* 9 *Cent. Rep.,* 625; *Boykin vs. Smith,* 65 *Ala.,* 294, 298; *Potts vs. Coleman,* 67 *Ala.,* 221, 227-8.

*R. T. Semmes,* for the appellee.

One who enters, under color of a grant that is void, is a disseisor and not a tenant at will.    2 *Crabbe's Law of Real Property,* 1548, *and notes.*    If a person enter land claiming it as his own, the statute, after a continuous possession of twenty years, gives him the title.    18 *Johnson,* 40, 355. The intent determines the holding.    10 *Johnson,* 356; 5 *Metcalf,* 15, 33; 6 *Metcalf,* 337; 4 *Gray,* 197.

The defendant being in possession, the burden of proof is for the plaintiff to show that she is not a disseisor.    5 *Metc.,* 173; 5 *Pick.,* 135; 9 *Barb.,* 237; 9 *Allen,* 525. Possession under a parol gift is adverse against the donor. 39 *Conn.,* 97; 21 *Conn.,* 413; 9 *Cush.,* 502; 4 *Gray,* 200; 6 *Metc.,* 337.    Twenty years' actual possession under oral claim gives title.    *Humbert, et al. vs. Church Warden, et al.,* 24 *Wen.,* 587.

See further as to the law governing parol gifts of land, accompanied by delivery of possession, 3 *Gill,* 157; 67 *Penn.,* 511; 63 *Penn.,* 275; 55 *Calif.,* 98; 17 *Calif.,* 629; 13 *Calif.,* 9.

As to the effect of an unexecuted judgment in ejectment against the casual ejector, upon the rights of the tenant in possession, see *MacKenzie vs. Renshaw, et al.,* 55 *Md.,* 291.

The only effect of a judgment in ejectment against the casual ejector as to tenants in possession, is that if found in possession when execution comes, they will be turned out.

4 *Zabriskie,* 544; *Adams on Ejectment,* 391; *Miles vs. Cald-well,* 2 *Wall.,* 35. Without execution judgment against the casual ejector has no effect against the defendant, claiming by twenty years adverse possession. 1 *Houst.,* 246; 27 *Ala.,* 364, 377; 13 *Johns.* (*N. Y.*), 229, 235; *Smith vs. Trabue,* 1 *McLean,* (*N. S.*), 87.

IRVING, J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellants against the appellee for a lot of ground containing about three acres. The appellee took defence on warrant, and surveys were made; but no question of location seems to have arisen. The appellants claim under mesne conveyances from the heirs-at-law of David Shriver, who died in 1853, leaving certain heirs-at-law, all of whom resided out of the State. The defendant claims by *parol gift* from David Shriver, the intestate ancestor of the plaintiffs' grantors, alleged to have been made in 1851, followed by possession continuously by her, which possession, as against these appellants, is now set up as adverse, and as an effectual bar to this suit; as it is alleged to have continued for a period exceeding twenty years. As both parties claim under David Shriver, the Circuit Court properly ruled that neither could deny David Shriver's title, and no exception was taken to that instruction.

The Circuit Court was asked to instruct the jury, that "the defendant has given no proof legally sufficient to prove title in her by adverse possession or otherwise," but this instruction the Court refused to give, and the controlling question in the case is whether this ruling was correct; and whether the instruction the Court did give touching that matter was justifiable.

The Court framed and gave two instructions as follows:

"1st. If the jury find from the evidence in this case that the defendant was placed in possession of the lands in controversy in this case by David Shriver, at a time when he

was owner thereof, with the understanding between them that the defendant was to hold, use and occupy them as a home, and as the owner thereof, and that the defendant entered into possession thereof with that understanding and intent, and has occupied the premises continuously from the time of such entry for twenty years or more before the institution of this suit, then the plaintiffs cannot recover."

"2nd. But if on the other hand the jury find from the evidence that the defendant was placed in possession of the said premises by the said David Shriver, only to take care of them or to occupy them for the benefit of said Shriver, or only to hold the same as a home until such time as he, the said Shriver, should withdraw such permission, or for any other purpose than to have, use and occupy them as her own, then the plaintiffs are entitled to recover; provided the jury further find that the said premises are within the lines of the plaintiffs' deeds from and through David Shriver, read in evidence, and that said deeds are properly located on the plats."

To the granting of the first of these instructions by the Court the appellants specially excepted, because the Court left to the jury to find whether David Shriver made a verbal gift of the premises to the defendant, which was claimed to be a question of law, and secondly, because there was no evidence legally sufficient to establish a parol gift, or to show a disseisin of David Shriver of the premises in controversy; "and, because there was no evidence that there was an understanding with the defendant and David Shriver, that she was to occupy the premises as a home and as the *owner* thereof."

We think the Court fell into error in giving the instructions quoted in lieu of the second paragraph of the plaintiffs' prayer which has also been recited. It is certainly not the law in Maryland, that a party can acquire title, which is maintainable at law, by parol gift followed by

actual possession, no matter how long and exclusively con-
tinued. It has been repeatedly decided in this State, that
no interest in land, for a period longer than seven years,
can be acquired at law, in any other way than by deed
duly acknowledged and recorded as required by the Acts
of 1715, ch. 47, and 1766, ch. 14, which are embodied in
section 1 of Art. 24, of the Code of Public General Laws.
No simple act *in pais* is sufficient to give title. *Peter vs.
Schley's Lessee,* 3 *Harr. & J.,* 211; *Mackall vs. Farmers
Bank,* 12 *G. & J.,* 176 ; *Anderson vs. Critcher,* 11 *Gill & J.,*
450 ; *Mahew vs. Hardesty,* 8 *Md.,* 479 ; *Howard vs. Car-
penter,* 11 *Md.,* 275. Occupancy merely under a parol
gift is not possession under *color of* title which, this Court
said in *Baker vs. Lessee of Swan, el al.,* 32 *Md.,* 358, " is
such title as in *appearance* is good and sufficient, but which
in reality is not good and effectual." Here there was no *ap-
parent* title; there was bare occupancy and nothing more,
except the claim in 1869, that David Shriver had given
the property to the appellee by parol, and she had en-
tered under his authority in pursuance of the gift.

The whole evidence in support of the appellee's defence
was her own statement as a witness in her own behalf.
She says, " Uncle David Shriver told me to go there and
live and take care of the property, and not to go away
and leave it as Brady had done; William Shriver was
afterwards surveying on the island and told me not to be
frightened; I have lived there since 1852, and built the
house that is there now, and have paid taxes since
1870. Mr. Walsh told me he had bought the property
when he came there just before the wharf was built; I
told him . I was sorry because David Shriver had given
it to me for a home. Mr. Walsh told me he was going
to build a wharf, and it would be noisy then, I had better
select a lot elsewhere; he would give me a home; I
told him I did not mind noise ; I had been employed by
David Shriver eighteen years; swept out the bank; he paid

me for my services; he never asked me for rent; they dumped earth on the lot when the basin was cleaned out; I consented because they told me it would be a benefit to my garden." She said she consulted a neighbor and he told her it would benefit the garden and she accordingly consented to it. She also testified "that Mr. Shriver was always kind to her; that when she left Mr. Shriver's she owned and occupied a small lot in the vicinity of the land in controversy here; that she built a dwelling house thereon, and that Mr. Shriver helped her to build the house by giving her some money to do so; that Genl. McKaig claimed the house and lot as his and turned her out of possession; that thereupon Mr. Shriver put her in possession of the property in controversy here; he told her to go and take it and keep it and not to leave it as Brady had done; that Brady had occupied the same property before she entered it and had gone off and left it; that the property was enclosed just as it now is, and that the line of enclosures had never been changed, but remain now as they then were." She also put in evidence that the land was, when she entered it, low and marshy and liable to overflow from the Potomac river, and was of small value for building purposes. The plaintiff had given evidence of an entry on the land in 1869, and the dumping of the earth and material taken from the basin to a considerable depth over the land; and that the appellee was ordered to remove her crop before doing so, which she did; and that when she was told that Mr. Walsh had bought the same said she was glad, that David Shriver had put her there and she was taking care of it for him and his heirs. It was also in evidence that a former ejectment suit had been brought and the appellee notified; that she appeared and entered into the consent rule of *lease entry and ouster*, and that afterwards her counsel struck out his appearance, and judgment was rendered against the casual ejector in favor of the plaintiffs on the 3rd of October, 1870. The

record of this suit and judgment was in evidence. No execution having issued on the judgment until the expiration of twelve years from its date this suit was brought.

Upon this state of facts the Court below ruled on the theory that the possession of the defendant was under color of title, and therefore adverse. It was error to suppose that there was any color of title ; or that the possession was adverse. "*Adverse possession,* by color of title " this Court says in *Baker vs. Lessee of Swan,* " is made out by the co-existence of two distinct ingredients ; the first, such a title as will afford color ; and secondly, such possession under it as will be adverse to the right of the true owner ; and whether these two essentials exist are, in all cases, *questions of law* to be determined by the Court, though the facts upon which they are founded are for the finding of the jury. Hence, when the facts exhibiting the title, and the possession under it, are shown, the Court will determine whether color exists, and the possession be adverse."

The title relied on was a parol gift, and the possession given was not such as to indicate a purpose to give the defendant a fee; and the possession enjoyed was not such as to establish an adverse title. Although a parol gift followed by possession will not give a *legal* title, equity will interfere, in some cases, and enforce specific performance, where the proof is *clear and satisfactory,* that the donor did agree to give, and did induce possession to be taken, and large expenses to be incurred in improvements, as if the property had actually been conveyed. But in such case the interference is on the ground of equitable consideration in the outlay, and to prevent the consummation of a fraud. The case of *Hardesty vs. Richardson,* 44 *Md.,* 617, was one of that character, and in it the whole question of when and to what extent equity will relieve, is there fully discussed and the authorities collected and cited. Upon the evidence of this defendant herself, a Court of equity could not and would not enforce a specific perform-

ance, by decreeing against David Shriver's heirs that they should convey the fee to Jane McIntyre of the premises in controversy. If it would not, it is too clear for argument, that a Court of law should not allow the same facts to go to a jury, as sufficient to warrant a verdict for defendant on the ground that she had acquired a *legal title* if they found the facts testified to. In the facts testified to by the appellee, we can see no element of adverse possession. By her own confession and testimony she was put in possession by David Shriver to take care of the property, which Brady who had preceded her in that duty had abandoned and left;—she was charged not to do as he had done. Being put, then, as an agent to have care of the property, all her acts of possession afterwards are to be referred to the permission under which the original entry was made. There is nothing in her testimony tending to establish a disseisin or ouster of David Shriver or those claiming under him, which the authorities all say the acts of possession, indicative of adverse holding, must effect. They must be hostile, open, notorious and exclusive, and must have been continuous for twenty years. They must be such as unmistakably indicate a claim of the absolute title in fee. *Ricard vs. Williams,* 7 *Wheaton,* 59; *Dean vs. Brown,* 23 *Md.,* 11; *Kirk vs. Smith,* 9 *Wheaton,* 241; *Campbell vs. Shipley,* 41 *Md.,* 97. She says she paid no rent, and that after 1870 she paid the taxes. The non-payment of rent is, of itself, not sufficient to indicate claim of title. This Court in *Campbell vs. Shipley,* most pertinently said "if no rent was paid and the tenancy was not expressly admitted, there is nothing to show that the possession was held in hostility to the rights of the landlord, and those claiming under him. In the absence of this proof nothing is to be presumed in favor of an adverse possession, and more particularly so where it commenced rightfully and with the consent of the owner." A decision more directly applicable could not be found. The possession

in this case, by defendant's own statement, commenced permissively " to take care of the property." In doing so she became a tenant at will. There is nothing to indicate any claim of title until the conversation she says she had with Mr. Walsh in 1869, when she says she told him that Mr. Shriver had given it to her for a home. Supposing this to be a claim of the fee as *against Walsh the new owner,* instead of only an assertion of claim of a home *for life;* and then conceding that from 1870, she did then pay the taxes, the new departure has not continued for twenty years. Besides, Walsh asserted his claim by ejectment which she did not defend after appearing to the suit by counsel, and Walsh obtained judgment for the property, and could have executed it by writ of *habere,* but did not. If her possession as against Walsh, after assertion of claim had continued for twenty years, there would have been some ground for her contention of right to hold adversely. But nothing short of that period will justify the presumption of a deed.

From what we have said it is clear, that the plaintiffs' first prayer ought to have been granted without modification, that the Court's own instructions were erroneous. The granting of the plaintiffs' first prayer unmodified makes the second prayer of plaintiffs unnecessary, and we need not therefore examine it, nor their third and fifth prayers.

In rejecting the fourth prayer of the appellants the Circuit Court, in our opinion, erred. That prayer asked the Court to say that the defendant was estopped by the ejectment proceedings in No. 146, Trials, Oct. Term, 1870, of the Circuit Court for Alleghany County, (wherein the defendant was defendant in possession,) from denying the right of possession to the parcel of land recovered in that suit, "for and during the term of twenty years, the demise laid in the declaration." In that case this defendant was also defendant, and was notified and appeared by counsel

who entered into the consent rule, and afterwards struck out his appearance, and judgment by default was rendered against the casual ejector. In *Aslin vs. Parkin*, 2 *Burr.*, 668, Lord MANSFIELD in announcing the unanimous opinion of all the Judges says of the tenant in possession, "if, after he is duly served, he does not appear, but lets judgment go by default, such judgment is carried into execution against him by a writ of possession. That there is no distinction between a judgment in ejectment upon verdict, and a. judgment by default; in the first case, the right of the plaintiff is tried and determined against the defendant: in the last case it is confessed." The case in which these decisions were made was an action for *mesne* profits, and there the Court said the "tenant was concluded by the judgment; and cannot controvert the title, and consequently,. he cannot controvert the plaintiff's possession." Of course this applies only to the term laid in the declaration, which *in this case has not yet expired.* So that lease or no lease could not come in question. *Tyler on Eject.,* 392. Upon *sci. fa.* on such judgment the question decided in the judgment could not again arise. *Bradford vs. Bradford,* 5 *Conn.*, 127. But as to the fee—the title—it is not conclusive; for by the structure of the pleading in the old form of action, under which the case offered in evidence was conducted and judgment rendered, it is impossible to plead former recovery. *Tyler on Eject.*, 592–3; *Jackson vs. Tuttle,*. 9 *Cowen,* 233 ; *Mackenzie vs. Renshaw,* 55 *Md.*, 299. A former verdict and judgment therefore are not conclusive as to title. In the last cited case this Court said "any judgment in ejectment under the old practice was conclusive upon nobody."

It follows that whilst the Court erred in rejecting the plaintiffs' fourth prayer because it only asked, that the defendant be declared estopped by the judgment in the former case from denying the right of possession to the property in controversy, and recovered in the former case,.

for and during the period of twenty years, which was the demise laid in the declaration; yet the Court below was entirely right in granting the defendant's seventh prayer, which told the jury that the verdict and judgment, in the former case, were not conclusive as to the question of *title* involved in this case. There a lease of twenty years only was declared for; here the entire title is in question. The second prayer of the defendant being but the converse in substance of the plaintiffs' first prayer in part, with the addition of simply declaring the burden on the plaintiffs to prove their case, there was no error in granting it. Of course it was incumbent on the plaintiff to show that his deeds included this parcel of land, for if it had not been conveyed to him, it was immaterial whether the defendant's title was good or bad. He could only recover on the strength of his own title.

This was not a case in which there was really a controversy over lines and the proper location of land, and it may be very doubtful whether it was a proper case for the allowance of defence on warrant. The 53rd section of Article 75, prohibits the issuance of a warrant of resurvey in actions of ejectment, unless the Court is satisfied there is a dispute as to the location of the land claimed in the action. In this case both parties claimed under David Shriver, and the only question was which had the better title. If the deeds were of such general import as to include all the real estate of David Shriver, or of such description as plainly to include this parcel of land, of course no warrant of survey was necessary. We do not know for these deeds are not in the record. Under the defence on warrant the defendant only located her possession by enclosure. The plaintiffs located various papers by actual survey in part; and by protraction in part; and there was no counter location according to the record. There was evidence, says the record, tending to show the correctness of the plaintiffs' location. The record contains none to the

contrary. If there was none it was misleading to grant that instruction; but being a granted prayer, and no exception to it for the want of evidence to support it, we cannot, under our rules, say it was granted in error.

It only remains to consider the question raised in the first bill of exception. In the former ejectment suit, after the defendant's attorney had struck out his appearance a judgment by default had been rendered. This judgment the defendant afterwards by other counsel moved to be stricken out. This motion was heard on the petition and affidavit of the defendant, the answer and affidavit of the plaintiffs, certain affidavits of two other persons made before a justice of the peace. The affiants whose affidavits were then filed are now dead, and those affidavits, which are with reference to certain admissions of the defendant, were offered by the plaintiffs as evidence in this case, but were not admitted. There was no error in their exclusion. They were used it is true upon that motion, so far as appears, without objection, but they were *ex parte* affidavits, and were not taken under order from the Court, or as far as appears, after notice to the other side, so that the right of cross examination might have been exercised. To make such evidence admissible it is imperatively necessary that the opportunity for cross examination must have been enjoyed, whether availed of or not. Upon the authorities they would not seem to have been admissible. 1 *Taylor's Ev.*, 435.

*Judgment reversed, and*
*new trial ordered.*

(Decided 14th March, 1888.)