# REID *v.* ANDERSON.

EJECTMENT; COMMON SOURCE OF TITLE; ADVERSE POSSESSION;
PRACTICE; INSTRUCTIONS TO JURY.

1.  Where in ejectment both parties claim under the same third person, it is *prima facie* sufficient for the plaintiff to prove derivation of title from that person without proving his title; but the defendant, if not otherwise estopped, may set up a title paramount to the common source and derive title to himself, or a title from the common grantor by deed, and he may set up title by adverse possession.
2.  Prayers for instruction which propose to submit questions of law to the jury are properly rejected.
3.  What constitutes title and seniority of title and adverse possession under claim and color of title, are questions of law, calling for legal definitions, and while the facts upon which such questions arise must be found by the jury, the legal propositions are for the court to decide.
4.  Adverse possession, to be effectual, must be an actual, continued, adverse and exclusive possession, attended with a manifest intention to hold and continue it, for the period required by the statute of limitations, and although it need not be continued by the same person, when held by different persons it must be shown that a privity existed between them.
5.  Where a break in the continuity of such possession is shown, the previous possession goes for nothing, and the wrongdoer must commence *de novo*.

No. 767.  Submitted March 9, 1898.  Decided May 13, 1898.

HEARING on an appeal by the defendant from a judgment on a verdict directed by the court in an action of ejectment.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Jackson H. Ralston* and *Mr. Frederick L. Siddons* for the appellant.

*Mr. Franklin H. Mackey* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action of ejectment brought by the appellee, Richard P. Anderson, against the appellant, John Reid, to recover a parcel of ground, being part of Lot 20, in Square 51, in the City of Washington, and described in the declaration as beginning for the said parcel at the southeast corner of said Lot 20, and running thence with the south line of said lot west 84 feet; thence north 16 feet; thence east 84 feet to Twenty-second Street; thence on the line of said street south 16 feet, to the beginning. In the parcel thus described the plaintiff claims a fee simple estate.

The defendant entered a plea of not guilty, and also a special plea, whereby he averred that "he now holds, and he and his predecessors in interest, title and estate, have held continuously for more than twenty years prior to the filing of the declaration, open, notorious, hostile, uninterrupted and actual adverse possession, under claim and color of title, of the premises described in the declaration." Issue was joined on these pleas.

Trial was had before a jury, and at the close of the evidence the court directed a verdict to be returned for the plaintiff; and the defendant has appealed.

The fact and manner of derivation of title to the premises sued for is stated in the bill of exception, but no deed or other muniment of title is set out in the record. It is stated that the title was derived from one Thomas Llewellyn. We understand, however, that there is no question made as to the legal construction of any of the title papers produced at the trial; and hence they were omitted.

As stated in the bill of exceptions, the plaintiff offered in evidence a duly recorded deed from Thomas Llewellyn and wife, dated October 6, 1853, purporting to convey in fee simple to the plaintiff the parcel of ground sued for, describing it as it is described in the declaration. The plaintiff

then stated, by his counsel, that he proposed to prove that the plaintiff and defendant both claimed under Thomas Llewellyn *as a common source of title*, and that plaintiff would not prove an antecedent title. But the defendant's counsel then and there denied that plaintiff and defendant claimed under Thomas Llewellyn as a common source of title, and stated that defendant's claim was under a tax deed and not under any deed from Thomas Llewellyn; and the defendant therefore objected to the reading of the deed in evidence from Llewellyn to the plaintiff, on the ground that the prior title had not been proven or offered to be proved. But the court overruled the objection and permitted the deed to be read in evidence; to which ruling of the court the defendant excepted.

There was no error in this ruling. It is a well-settled principle in ejectment law, and constantly applied in practice, both on the grounds of convenience and as a means of promoting the ends of justice, that where both parties *claim under the same third person*, it is *prima facie* sufficient to prove the derivation of title from that person, without proving his title. Adams on Eject. 248; 10 App. D. C. 426. But the defendant, if not otherwise estopped, may still set up a title paramount to the common source, and derive the title to himself, or a title from the common grantor by a deed, or under an incumbrance created by such grantor, prior to the title of the plaintiff. 2 Greenl. Ev. Sec. 307. And so he may set up title by adverse possession.

Here there was no attempt to derive title to the defendant, or to those under whom he claims, from any paramount source to that under which the plaintiff claims. There was no deed produced for the tax title referred to, and the court was entirely correct, in a subsequent stage of the trial, in striking out all the evidence that had been given in relation to a supposed sale of the property for taxes.

The plaintiff further proceeding to show that he and the defendant claimed under a common source of title, then

read in evidence, against the objection of the defendant, a duly recorded deed from Thomas Llewellyn to a certain Francis Curry, dated November 16, 1853, (a month and twelve days later than the deed to the plaintiff), purporting to convey in fee simple all of Lot 20, except the south 16 feet, as described in the previous deed of the 6th of October, 1853, to the plaintiff. And next, "for the same purpose as before stated," the plaintiff offered and read in evidence a duly recorded deed from Thomas Llewellyn and wife and Francis Curry, dated August 13, 1858, (four years and eight months subsequent to the date of the deed to the plaintiff), purporting to convey, in fee simple, the whole of Lot 20 to Beall Howard. This, of course, included the 16 feet south portion of the lot, that had been previously conveyed to the plaintiff.

The plaintiff then proceeded to show further the derivation of title to the defendant from the common source, by offering and reading in evidence a duly recorded deed in fee from Henry Howard and wife to Jane Howard, dated May 6, 1863. This deed recites an alleged will of Beall Howard, father of Henry Howard, dated January 29, 1861, by which all the real estate of which the testator was *seized and possessed* was devised to Henry Howard, the son, and Jane Howard, the wife, of Beall Howard, as tenants in common; the deed purporting to convey the undivided one-half interest of Henry Howard in Lot 20 to Jane Howard.

It appears that Jane Howard died in April, 1879, intestate and without issue. And the plaintiff further to show the source of the claim of the defendant's title, gave in evidence the record of a partition proceeding in equity, in the Supreme Court of the District of Columbia, whereby it appears, according to the statement of the bill of exception, that the bill for partition of the real estate of Jane Howard, deceased, was filed in July, 1879, by and against certain parties claiming and representing themselves to be the heirs-at-law of their deceased sister, Jane Howard,

13 Ct. App.—4

who was alleged to have died intestate and without issue, and seized in fee simple of the whole of Lot 20, part of which is here in controversy. It was alleged in the bill that the lot was not susceptible of partition among the parties, and a sale was prayed to be decreed.. The bill was answered, and a decree for sale was passed, and R. J. Donahue and N. T. Murray were appointed trustees to make sale of the *right, title and interest of the parties to the suit* (the plaintiff not being a party), in and to said Lot 20. The sale of the lot was accordingly made by the trustees, and the defendant became the purchaser, and received a deed from the trustees for the lot, dated June 3, 1880, which was recorded, and was offered and read in evidence by the plaintiff, for the purpose of showing how the defendant derived title to Lot 20.

The foregoing was all the evidence that was offered relating to the title of the premises in question, so far as it depended upon documentary or written evidence. There was some evidence of witnesses, on both sides, as to the character and nature of the holding and possession of the defendant, and those under whom he was shown to have claimed title to the Lot 20, including the part sued for in this action. This evidence showed that there had been some old shanties upon the lot, but they had been allowed to go to decay.

Upon the close of the evidence on the part of the plaintiff, the defendant asked the court to instruct the jury to return a verdict for the defendant, but which request the court refused; and at the close of the whole evidence, the defendant requested a series of six instructions to the jury, all of which were refused, and the court directed the verdict to be returned for the plaintiff.

Upon the several rulings of the court below just stated, there remains to be considered but a single question, and that is, whether there was any legally sufficient evidence that should have been submitted to the jury, upon the question of adverse possession of the premises by the defendant, and those under whom he claimed, as against the plaintiff?

The deed of Llewellyn to the plaintiff, bearing date the 6th of October, 1853, conveyed a title to the premises sued for, superior and paramount to that conveyed by the deed of Llewellyn and wife and Francis Curry, bearing date the 13th of August, 1858, to Beall Howard, for the whole of lot 20, including the part now sued for. This latter deed conveyed no title to the premises here in controversy, and at most could only operate as a disseisin of the plaintiff and as affording color of title to those who might enter and hold possession of the ground under the deed as against the plaintiff. There is no pretense that there was any superior or paramount title acquired by any of the parties under whom the defendant claims, to that acquired by the plaintiff under the deed of October 6, 1853. If title exists at all in the defendant it must exist by reason of adverse possession only.

The prayers for instruction offered by the defendant upon the subject of adverse possession were properly rejected, if for no other reason, because they required the jury to decide questions of law. They all proposed to submit questions of law to the jury. What constitutes title and seniority of title and adverse possession under claim and color of title are all questions of law calling for legal definitions; and while the facts upon which such questions arise must be found by the jury, the legal propositions themselves are for the court to decide. Or, as said by the Supreme Court, "adverse possession is a legal idea, admits of legal definitions, of legal distinctions, and is therefore correctly laid down to be a question of law." *Bradstreet* v. *Huntington*, 5 Pet. 402, 438.

What then are the essential constituents of adverse possession to make it effectual either as ground for recovery in ejectment or as a defense to that action? In the case of *Doswell* v. *De la Lanzo*, 20 How. 29, it was held to be settled law, of general application, that "Possession to be effectual, either to prevent a recovery or vest a right under

the statute of limitations, must be an actual possession, attended with a manifest intention to hold and continue it. It must be, in the language of the authorities, an actual, continued, adverse and exclusive possession for the space of time required by the statute. It need not be continued by the same person; but when held by different persons it must be shown that a privity existed between them."

The principle is stated with great clearness and precision by the court in the case of *Sawyer* v. *Griffin*, 10 Cush. 244, cited by counsel for the plaintiff. In that case it was said: "To sustain separate successive disseisins as constituting a continuous possession, and conferring title upon the last disseisor, there must have been a privity of estate between the several successive disseisors. To create such privity there must have existed, as between the different disseisors, in regard to the estate of which a title by disseisin is claimed, some such relation as that of ancestor and heir, grantor and grantee, or devisor and devisee. In such cases the title acquired by disseisin passes by descent, deed, or devise. But if there is no such privity, upon the determination of the possession of each disseisor, the seisin of the true owner revives and is revested, and a new, distinct disseisin is made by each successive disseisor."

It has been said that if there be one element more distinctly material than another in conferring title by adverse possession, where all requisites are so, it is the existence of a *continuous* adverse possession. Or, if the continuity of the possession be broken for a single day before the twenty years have elapsed, the previous possession goes for nothing and the wrongdoer must commence *de novo*. *Olevine* v. *Holman*, 23 Pa. St. 284; *Groff* v. *Westland*, 34 Pa. St. 308. Many other authorities to the same effect could be added, but it is unnecessary.

The evidence of adverse possession by either Henry Howard, prior to the date of the deed to Jane Howard, of May 6, 1863, or by Jane Howard, prior to the year 1870, is

entirely too vague, speculative and conjectural to be sub-
mitted to the jury to become the foundation of a verdict to
defeat the legal title of the plaintiff. The evidence wholly
fails to show either an actual, exclusive, or a continuous
possession, adverse to the plaintiff. As we have seen, pos-
session, to become adverse, and effectual to defeat a clear
pre-existing legal title, must be actual, continuous, and
exclusive, attended with such manifest intention of holding
and continuing the possession as will make that possession
notorious to every one interested in reclaiming the property
to the rightful ownership. The evidence of adverse posses-
sion by Jane Howard from 1869 or 1870, to the time of her
death in April, 1879, is very questionable, and far from be-
ing conclusive, and from the time of her death to the time
of the entry of the defendant, under the trustees' sale made
to him in June, 1880, it does not appear who was in actual
possession, or whether the parcel of ground in controversy
was not entirely vacant. It is not shown, certainly, that
the parties who claimed to be the collateral heirs of Jane
Howard were in actual possession; and after the purchase
by the defendant, from the trustees, it appears, according to
the testimony of the defendant himself, there was a break
in what he claims to be a continuity of possession, by the
actual possession of the plaintiff for a period of about two
years, in 1886 and 1887. So that there was no such open,
actual, exclusive, and continued possession of the premises
by the defendant, and those under whom he claims, for the
full period of twenty years, as would make a good defensi-
ble title as against the party having a clear legal paramount
title by deed. *Ward* v. *Cochran,* 150 U. S. 597; *Holtzman*
v. *Douglas,* 168 U. S. 285.

The court below was therefore right in instructing the
jury to find their verdict for the plaintiff, and it follows that
the judgment must be affirmed ; and it is so ordered.

*Judgment affirmed.*