MISSOURI PACIFIC RAILROAD COMPANY *v.* BOZEMAN.

Opinion delivered January 21, 1929.

E. B. Kinsworthy and Richard M. Ryan, for appellant.

D. M. Halbert, for appellee.

Smith, J. The appellant railroad company brought suit in unlawful detainer to recover possession of the southwest quarter of the northeast quarter section 17, township 5 south, range 19 west, Hot Spring County, from appellee Frank Bozeman.

The complaint alleged that in 1910 the railroad company executed a written lease, with an option to purchase, of the land described to one J. T. McCowan, and that McCowan took possession under the lease and remained in possession until 1926, when he surrendered the possession to Bozeman. There was an allegation of notice to quit and demand for possession, in writing, and the refusal of Bozeman to surrender possession.

Bozeman filed an answer, in which he alleged that he was in possession of the land, and had been for two years, and that he acquired his right of possession by a deed from McCowan. The answer denied that McCowan had ever been a tenant, but alleged the fact to be that McCowan had been in the adverse and exclusive possession of the land for more than twenty years continuously before the institution of the suit.

On behalf of the railroad company the lease was offered in evidence, and it was shown that Bozeman was let into the possession by McCowan.

McCowan, while hostile to the railroad company, was called as a witness in its behalf, and testified that the forty-acre tract was in the center of his field, and that he had cleared and put the land in cultivation. He admitted signing the lease, but testified that it was his understanding, when he did so, that he was signing a lease for land south of the forty-acre tract described

on which a little house stood, and that he occupied the land as a part of his farm for much more than seven years, claiming to be the owner thereof, and that he had sold and conveyed the land by deed to Bozeman. McCowan did not claim to have paid any taxes on the land, and it was shown that all taxes had been paid by the railroad company, except those for 1926, which had been paid by Bozeman in 1927.

At the conclusion of the above testimony offered on behalf of the railroad company, the defendant, without offering any testimony, asked that the court, sitting, by consent, as a jury, find in his favor and dismiss the complaint, and this was done.

Upon the case made the court should have found for the plaintiff railroad company. The undisputed testimony shows that McCowan entered as the tenant of the railroad company under a written lease. It is true McCowan testified that he was mistaken as to the land described in his lease, but there was no mistake about his taking possession of the land which his lease described. He therefore became the tenant of the railroad company when he entered into possession of the land under the lease, describing it, although he was mistaken as to the land which the lease described.

In the case of *Dunlap* v. *Moose*, 98 Ark. 235, 135 S. W. 824, it was said:

"The action of unlawful detainer is only to decide the right to the immediate possession of lands and tenements, and not to determine the right or title of the parties to or in them. A tenant cannot dispute the title of his landlord while he remains in possession under him, nor acquire possession from the landlord by lease and then dispute his title, but must first surrender possession and bring his action. *Washington* v. *Moore,* 84 Ark. 220, 105 S. W. 253."

See also *Burton* v. *Gorman,* 125 Ark. 141, 188 S. W. 561; *Garrett* v. *Edwards,* 168 Ark. 243, 269 S. W. 572.

The deed from McCowan to Bozeman could convey no greater interest than McCowan himself possessed,

and, as he was a tenant, the deed, in legal effect, was nothing more than an assignment of the lease.

In the case of *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72, we quoted from 1 R. C. L., § 68, of the article on "Adverse Possession," and under the sub-title, "Whether Tenant May Hold Adversely," as follows:

"As a general rule, the possession of a tenant is that of his landlord, and will be so deemed until the contrary appears. This rule affects all who may succeed to the possession, immediately or remotely, through or under the tenant. Therefore, so long as the relation of landlord and tenant exists, the tenant cannot acquire an adverse title as against his landlord. This is merely one application of the rule that the tenant cannot deny his landlord's title. It is equally well settled that one who enters as tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim, or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known of it."

There is nothing here to show that McCowan repudiated the tenancy and that the railroad company had knowledge of that fact. The undisputed evidence is to the contrary, as is evidenced by the unbroken tax payments of the railroad company from the date of the original lease to 1927, when Bozeman paid the 1926 taxes.

The judgment of the court below must therefore be reversed, and the cause will be remanded.