## HUNGERFORD *v.* HUNGERFORD, ET UX.

[No. 276, September Term, 1963.]

*Decided April 8, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*James R. Bucher,* with whom were *Jerrold V. Powers* and *Sasscer, Clagett & Powers* on the brief, for appellant.

*Samuel J. DeBlasis,* with whom were *DeBlasis & Kahler* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

This case is a sequel to the one reported in *Hungerford v. Hungerford,* 223 Md. 316, 164 A. 2d 518 (1960), wherein the plaintiffs (William H. Hungerford and his wife Viola) by a bill in equity against the defendant (Susie E. Hungerford, widow of the deceased Henry A. Hungerford, III) sought to have title to the property (where William and his family have lived for more than forty years) quieted and confirmed in them on the ground that a fee simple title had been acquired by adverse possession, and, in the alternative, sought specific performance of an oral agreement between Henry and William to convey the property to William. We denied the claim for specific performance under the doctrine of laches and remanded the case to permit amendment and further proceedings with respect to the claim for adverse possession.

The evidence presented on the claim for specific performance together with that taken upon remand on the claim of adverse possession shows that in 1899 a fifty acre farm was conveyed to Nathaniel Hungerford, Sr., for life with remainder to two of his sons (Nathaniel, Jr., and Henry A., III). A third son (William H.) was not a remainderman. In 1922, Henry and William staked out a lot on the farm, which Henry orally agreed to convey to William in exchange for William's promise to perform certain labor or work for the life tenant. William took actual possession of the lot, constructed a dwelling thereon and moved into it. From then until now William and his

wife and family have lived continuously on the property peacefully and without being disturbed.

The life tenant died in 1935 and the remaindermen held the farm as tenants in common until 1944 when they partitioned it by deed. Nathaniel, Jr., took the northerly twenty-five acres and Henry took the southerly twenty-five acres including the site of William's dwelling. Henry died in 1957, leaving Susie as his sole heir and the present record owner of the southerly twenty-five acres.

William made repeated demands on Henry during his lifetime to execute and deliver to him and his wife a deed for the property in question, but Henry repeatedly refused to convey the same, and Susie, since the death of her husband, has refused, and still refuses to execute a conveyance of the property.

On these facts, the chancellor, being satisfied that the plaintiffs had established title to the property by adverse possession, decreed that the defendant's claim to the property should "be forever quieted and confirmed in the plaintiffs." And the defendant, asserting that possession of the property was permissive and not adverse, appealed. The only question presented on this appeal is whether the possession was hostile.

"Possession to be adverse must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the statutory period of twenty years." *Bishop v. Stackus,* 206 Md. 493, 498, 112 A. 2d 472 (1955) ; *Peper v. Traeger,* 152 Md. 174, 181, 136 A. 2d 537 (1927). Every element of adverse possession must be shown and if it is not, the possession will not confer title. *Goen v. Sansbury,* 219 Md. 289, 297, 149 A. 2d 17 (1959). The defendant-appellant concedes that the possession of the plaintiffs-appellees was actual, open, notorious and continuous, but denies that it was exclusive and hostile.

The "hostility" essential to acquisition of title by adverse possession does not necessarily import enmity or ill will, but rather that the claimant's possession be unaccompanied by any recognition, express or inferable from the circumstances, of the real owner's right to the land. See 4 Tiffany, *Real Property* (3rd ed.), § 1142. Where, as in the case at bar, a person enters into possession of land pursuant to the terms of an oral agreement, which lacks enforceability because of the Statute of

Frauds, it is clear that he can acquire no title to the land regardless of how long and exclusively possession is continued. *Walsh v. McIntire,* 68 Md. 402, 13 Atl. 348 (1888). See also 6 *Powell on Real Property* § 1016. It has long been held by this Court that where the original entry and subsequent occupancy of land was under a contract, or with the consent or permission of the owner, the possession would not be hostile or adverse and could not evolve into a subsisting title on which recovery could be had, unless the record owner had notice that the continuing possession was under a claim of right, since it is the intent with which possession is continued that gives it its character as adversary. *Armstrong v. Risteau,* 5 Md. 256 (1853); *Waltemeyer v. Baughman,* 63 Md. 200 (1885); *Feldstein v. Segall,* 198 Md. 285, 81 A. 2d 610 (1951). Moreover, since an original permissive possession is presumed to continue, there can be no change to an adversary possession in the absence of affirmative evidence of that fact. *Feldstein v. Segall, supra.*

Although the plaintiffs-appellees contend that they have claimed title to the property as a matter of right since the death of the life tenant, there is no evidence whatsoever that the claim of entitlement to a deed under the oral agreement with Henry has ever been changed to a claim of right to title based on adverse possession. On the contrary, the only evidence in the record is to the effect that the plaintiffs-appellees, after the death of the life tenant in 1935 and before the death of Henry in 1957, made numerous requests for a deed conveying the property to them, as they had done before Henry's interest became possessory and as they continued to do after his interest passed to his widow. We think these repeated demands clearly indicate that the plaintiffs-appellees, instead of claiming title as a matter of right by adverse possession, never ceased to recognize the continuance of the legal title in Henry and his heir. See 3 Am. Jur. 2d., *Adverse Possession,* §§ 32-36. Consequently, we are constrained to hold that the chancellor was in error in finding that the plaintiffs had acquired title by adverse possession.

*Decree reversed; the appellees to pay the costs.*