SUPREME BUILDERS, INC. *v.* REDMILES ᴇᴛ ᴀʟ.

[No. 283, September Term, 1967.]

*Decided July 2, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*S. Michael Pincus,* with whom were *Gordon & Perlis* and *Samuel Gordon* on the brief, for appellant.

*John L. Clark* for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

Five surveyors testified in this boundary line dispute. We have read their testimony and we have examined their surveys but we must confess, reluctantly to be sure, to an inability to understand fully why they are in such disagreement. The appellant's statement of the facts sheds little light on the matter and the appellees have finessed the requirement of Maryland Rule 831 d 3 [1] by simply repeating what appears in the opinion

---

1. "A statement of any additional facts necessary to correct or amplify the statement in appellant's brief in so far as it is deemed erroneous or inadequate. * * * "

of the trial judge, Mayfield, J. Since it is unlikely we could improve upon Judge Mayfield's recital of the facts and since appellant's version neither adds thereto nor subtracts therefrom, we shall quote from his opinion:

"By agreement of counsel, the above entitled causes were consolidated for trial, although they will be treated separately in this opinion.

"Both causes involve the location of the property lines of the lots owned by the respective complainants in an old platted subdivision located in Howard County and known as 'North Laurel.' A plat of the 'Revised Map of North Laurel' is recorded among the Land Records of Howard County in Liber J.H.O. No. 60, folio 642, a copy of that being filed in both causes as defendants' Exhibit No. 3. This plat indicates that the lots owned by the respective complainants have a width of fifty feet each, with an even depth of one hundred and fifty feet each. The recorded plat, however, does not show any metes, bounds, courses or distances.

"Charles J. Campbell and Elsie E. Campbell, his wife, (the Campbells) acquired title to Lots 13 and 14 in Block 4 of North Laurel as shown on the recorded plat, by deed dated August 9, 1958, from Percy H. Duck and wife. Mr. Campbell testified that the boundaries of these two lots were marked when he and his wife acquired title, and that until the respondent, Supreme Builders, Inc. (Supreme) asserted a claim to twenty-three feet of the land which he considered to be his own, no one had made any prior claim to, or trespassed upon, these lots. The Campbells filed their bill of complaint against Supreme (Equity No. 6744) wherein they allege that Supreme acquired title to Lots 15, 16 and 17 of Block 4 in North Laurel on May 19, 1966, and notwithstanding that the boundary between Lots 14 and 15 was clearly delineated by a fence (which was erected in the month of July of 1966) Supreme had entered the complainants' land, proceeded to demolish said fence and grade away the surface of

the earth, and threatened to build a house on or near complainants' property. Supreme answered said bill of complaint denying the material allegations thereof, and filed a counter-claim alleging its ownership of Lots 15, 16 and 17 in Block 4 of North Laurel, and that it had had said lots surveyed by a duly registered land surveyor and thereafter entered the land it claimed to own based on said survey. The Campbells claim a continuing trespass, and damages to their land by Supreme, and Supreme claims a continuing monetary loss caused by the Campbells.

"Mr. Campbell testified that the fence on his land had been erected at a cost of $150.00, and that Supreme had dug a hole on his lots which would cost approximately $1200.00 to fill; that the dwelling on his lots was about ten years old and was located in the center of his one hundred feet, and that he had had the lots surveyed by Mr. Bowen approximately ten years ago and before he acquired title. He also testified that the lot immediately to the south of Lot 13 was unimproved, and that the next three lots immediately to the south, owned respectively by parties named Lilly, Dustin and Till, were all improved lots, and that if the boundary line of his lots was moved to the extent of twenty-three feet, the newly located line would be six feet from his dwelling.

"John Raymond Redmiles and Amanda May Redmiles, his wife, (the Redmiles) filed their bill of complaint against Supreme, (Equity No. 6745) alleging ownership of Lots 23, 24 and 25 of Block 12 of North Laurel which they acquired by deed dated October 6, 1933, upon which they have for many years resided and have been in continuous possession, and the ownership by Supreme of Lots 26, 27, 28 and 29 of Block 12 of North Laurel, which it acquired by deed dated May 19, 1966, and notwithstanding that the boundary between Lots 23, 24 and 25 was clearly delineated by a fence (erected in July of 1966), Supreme had entered their land and proceeded to demolish said fence,

and threatened to build a house on or near the complainants' property. Supreme answered said bill of complaint, denying the material allegations thereof, and filed a counter-claim alleging its acquisition on May 19, 1966 of Lots 26, 27, 28 and 29 in Block 12 of North Laurel, and that it had caused said lots to be surveyed by a registered surveyor, and that the complainants had used force and threats to keep Supreme off the complainants' property. The Redmiles claim a continuing trespass and damages for the invasion of their property and the destruction of their fence, which damages could be ascertained at law, and also claim a willful and malicious invasion of their property by Supreme, entitling the complainants to punitive damages, and Supreme claims a continuing monetary loss caused by the Redmiles.

"Mrs. Redmiles testified that she and her husband had moved into the property during the month of September 1933, and have lived there ever since; that during the years of their residence they had planted shrubs and flowers and had maintained the same yard since 1933; that they had erected the fence during the summer of 1966 at a cost of $150.00, and in July of 1966, Supreme had removed the fence. She also testified that they had had their property surveyed in 1963 by a Mr. Howley and a Mr. Bowen at which time corner pipes had been placed. Mr. Redmiles testified that they had planted bushes next to the line of Lot 22 of Block 12 formerly owned by a Mr. Nichols, and there was testimony to the effect that the Redmiles had kept Lot 22 cleared over a period of years, although making no claims to any part of that lot.

"A Mrs. Duck (the mother of Mrs. Campbell), testified that she had lived in this same area for 61 years, and that the prior owner of the Redmiles' lots maintained a hedge along the full front of these lots prior to 1933.

"A Mr. Lilly testified to the ownership of Lots 10 and 11 in Block 4 of North Laurel; that he had lived

there twenty-six years, had owned these lots over twenty-seven years and had built on Lot 10 in 1940.

"A Mr. Burley testified that he lived on Lot 42 and part of Lot 4 in Block 12 of North Laurel, and that he had known the Redmiles for a period of sixty-one years, and that he had known the Redmiles property for more than twenty years.

"The whole difficulty in these two cases revolves around the unexplained disagreement between several surveyors and several surveys. At the request of the Court, counsel for the complainants, Redmiles and Campbell, supplied a copy of a deed from George W. Cissell, et al, to Job Barnard, dated September 10, 1891, and recorded among the Land Records of Howard County in Liber J.H.O. No. 57, folio 570, which describes by metes and bounds a portion of the property comprising North Laurel, and particularly that portion thereof which encloses the properties which are the subject of these causes. The original subdivision plat of North Laurel is recorded among the Land Records of Howard County in Liber J.H.O. No. 60, folio 569. This latter plat does show courses and distances and said plat shows a stone located at a point which would be at the end of the third line of the description contained in the deed from Cissell to Barnard and which, when related to the Revised Map of North Laurel, would be located at the southeasternmost corner of Lot 26 of Block 4, and also shows a stone located at a point which would be at the end of the third line of the same description and which, when related to said Revised Map of North Laurel, would be located at the northeasternmost corner of Lot 51 of Block 6.

"Mr. Bowen, a civil engineer and registered land surveyor for many years, (now retired) called as a witness by the complainants, testified that he had surveyed the Redmiles property, other properties located on Baltimore Avenue in North Laurel, and the Duck property (located in Block 5). He had located and

used the stone located at the northeast corner of the subdivision and pipes west of said stone which he said had been set out by a surveyor named Cockey, now deceased. He had surveyed the Lilly and Dustin properties which said survey, he said, corresponded to 'use lines,' and the line of use on the Redmiles property was consistent with the boundary he established. He also surveyed the Burley property (Lot 42 and part of Lot 4 in Block 12). In surveying the Redmiles property he started from the Burley lot which he says he and Mr. Jeppeson (witness surveyor called by Supreme), agreed upon as to boundary lines and location. He also testified that he had used the same base reference stone (the stone located at the northeastern-most corner of the subdivision, which stone he says has now disappeared) in surveying the properties located in adjacent North Laurel Park subdivision; that he had worked in this area for seventeen years and that he never located any stone at the southeast corner of Lot 26 in Block 4 until this past summer. He also says that the location of Baltimore Avenue, as shown on the recorded plat, has been changed by usage at the point where Gorman Avenue and Baltimore Avenue intersect, and that the circle shown on the Revised Map of North Laurel at this point does not now exist.

"Mr. Clark, a witness surveyor called by the complainants, testified that he had surveyed lots on the northeast side of Gorman Avenue, and in surveying Lots 4, 5, 6, 7, 8 and 9 in Block 4, he had found use lines and pipes approximately on what he considered to be the true boundary of the lots he was surveying, the pipes having been located along the back boundaries of those lots.

"Mr. Ward, an officer of Supreme, testified that his company desired the re-subdivision of Lots 26, 27, 28 and 29 in Block 12 so that the inner lines thereof would be changed to provide wider lots, making three lots out of the former four lots; that Supreme had

caused all their lots to be surveyed by Messrs. Townsend and Jeppeson at the time of its purchase, and upon receiving the results of their work, had consulted the complainants, obviously in an effort to convince them of the correctness of the survey by Townsend and Jeppeson. Upon learning of the complainant's disagreement with Supreme's contention and wishing to be sure of the correctness of the Townsend and Jeppeson surveys, employed a Mr. Helm, a registered land surveyor for twenty years. Mr. Helm testified that his survey of Supreme's properties in this area was made independently of any work done by Townsend and Jeppeson. He said his survey party located a number of physical markers on the north line of Block 6, and also at the northeast corner of Block 6, a stone at the eastern extremities of Block 4, an iron pipe in the easterly line of Block 4, and two iron pipes at the southeast corner of Block 4. The marker which he found at the northeast corner of Block 6 was a pipe, and a painted white stone was located at the southeast corner of Block 4 (which this Court understands to mean at the southeast corner of Lot 26 in Block 4). He concluded that these two latter markers were correct. As to his survey of the properties located in Block 12, he testified that he found several markers in the central part of Block 5, a pipe at the northeast corner of Lot 30 in Block 12, and also located a pipe at Lot 23 in Block 12 which he could not verify by approximately twenty-five feet. He testified that there was enough land in each block to give each owner the amount of land he owned, and also said that the accuracy of his determination would depend upon the accuracy of other surveys, and that by moving the lines in Block 4, several lots in that block would be adversely affected. He says that all four houses in Block 4 are *possibly* (emphasis supplied) mislocated by twenty-three feet, and that he did not feel that the physical use of lots by Redmiles and Campbell was controlling.

454

"Mr. Jeppeson, a land surveyor for thirty years, called by Supreme, testified that he had surveyed the properties adjoining Redmiles and Campbell in March of 1966; that he had worked from a boundary survey, the northeast corner of the subdivision, and the southeast corner of Lot 26 in Block 4 at which latter point, he says, was located a stone which he had first used in 1959. He testified that there was an error of twenty-three feet in Block 4 to the north and error of thirty-three feet in Block 4 to the south, and says he does not see how this strange error could occur if all surveys were started from the same point. He further testified that he had surveyed a lot next to Burley's lot (which latter lot had been surveyed by Mr. Bowen), but that he did not tie in the survey of that lot with the Redmiles property. He did not know how a moving of the lines affect the improvements in Block 4.

"Mr. Townsend, a land surveyor called by Supreme, testified that he had located the stone at the southeast corner of Lot 26 in Block 4, an iron pipe at the northeast corner of the subdivision, and pipes and fences in back of Lots 18 to 26 in Block 4. He did not find any stone at the northeast corner of the subdivision, but did find a pipe at that location. He refused to put a pipe in a corner of Lot 26 in Block 12 where he thought it should be because of the existence of a hedge line."

I.

Judge Mayfield disposed of the Redmiles case, "without particular concern regarding the conflicting surveys," by holding that "sufficient proof was offered to establish their title to the land claimed by them by adverse possession." Supreme advances the exotic theory that because the Redmiles acquired title by means of a deed (in 1933) their entry into possession was permissive and that there is no evidence of a change to adverse user. Supreme insists *Hungerford v. Hungerford,* 234 Md. 338, 199 A. 2d 209 (1964), is authority for that proposition but it is quite obvious that Supreme has misread the opinion.

Although the Redmiles maintained the same yard with the same boundaries (marked by bushes) continuously since 1933, Supreme insists that because Mrs. Redmiles said they didn't "claim any more than 150 feet of property" and that she didn't "want any more than what * * * [she] bought and paid for" the intention to hold adversely is rebutted. Supreme cites decisions from other jurisdictions which seem to support its contention. The law of Maryland, however, is to the contrary. Recently, in *Freed v. Cloverlea Assn.,* 246 Md. 288, 297, 228 A. 2d 421 (1967), we had occasion to approve what Judge Hammond (now C. J.) said in *Tamburo v. Miller,* 203 Md. 329, 336, 100 A. 2d 818 (1953):

> "It has been said often in the earlier cases that where a land owner extends his fence, through inadvertence, ignorance or mistake, as to the location of the true boundary line, so as to embrace the land of a neighbor, but with no intention of claiming the area thus enclosed, adverse possession cannot be established because the holding of the extended area is neither adverse nor hostile to the true owner. See, for example, *Davis v. Furlow's Lessee,* 27 Md. 536. The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial."

Supreme next complains that there is a variance between the pleadings and the proof and, therefore, that the chancellor should have decided only which surveys were correct instead of evading the issue by a finding of adverse possession. It claims the issue of adverse possession was not raised in the pleadings. However, it is stated in the bill of complaint that the Redmiles have resided on the property "and have been in continuous possession" thereof. Whether the issue was thus

raised need not concern us. Nowhere does it appear that Supreme made any attempt to exclude the issue of adverse possession or that it objected to, or moved to strike, any of the testimony produced by the Redmiles. The settled rule is that when evidence is let in generally without objection and no attempt is made in the trial court to limit or confine its effect, it is in for all purposes, and it must be considered and allowed its full force. *Sagner v. Glenangus Farms,* 234 Md. 156, 162, 198 A. 2d 277 (1964) ; *Chesapeake Co. v. Goldberg,* 107 Md. 485, 489, 69 Atl. 37 (1908). See, also, Maryland Rule 885.

Supreme contends finally that it had entered into a "compromise and settlement" with the Redmiles. It does seem that at one point Supreme's president had persuaded Mr. Redmiles that Supreme's position was correct but after Mr. Redmiles consulted Mr. Bowen, his surveyor, he changed his mind. The nub of the matter, however, is that Mrs. Redmiles did not agree to anything. She denied, rather emphatically, that she had entered into any kind of a compromise. Nor was it shown that Mr. Redmiles was her agent for that purpose or that he ever undertook so to act. In fact, he told representatives of Supreme that "they had to see * * * [his] wife. See what she said * * * she had just as much right to tell them as * * * [he] did." Since they owned the property as tenants by the entireties her agreement was necessary and without it his was a nullity. *Abrams v. Eckenrode,* 136 Md. 244, 249, 110 Atl. 468 (1920).

In the circumstances we cannot say Judge Mayfield's holding in the Redmiles case was clearly erroneous. Maryland Rule 886 a.

## II.

Judge Mayfield thought the Campbell case presented "a more difficult question." We quote from his opinion:

> "As to the claim of Mr. and Mrs. Campbell, a more difficult question is presented. This Court has listened to the recording of the testimony of all the surveyors who testified at the hearing of this cause, with the hope of finding a clue to the differences between the surveys, but without success. There is no claim of ad-

verse holding so that the Court must determine which of the surveys is to be accepted and recognized. 'Where there are conflicting surveys, the problem before the court is fundamentally one of fact, inasmuch as the general rules as to preferences are merely guides for ascertaining the intention of the parties.' *Zawatsky Co. v. Feldman Corp.,* 203 Md. 184, at page 187. This case is unlike *Giles v. DiRobbio,* 186 Md. 258. In that case the Court of Appeals refused to adopt one survey as being correct, as to do so would have resulted in the extension of a lot on to the land of a stranger that had never been included in, nor was a part of the development in which the surveyed lot was located. In the instant case all agreed that there was sufficient land within Block 12 of North Laurel to accommodate all the lot owners therein. Mr. Bowen, testifying for the Campbells, had used as a primary monument the stone which he found at the northeast corner of the subdivision, and also had used some pipes located west of said stone which had been set by a now deceased surveyor. The other surveyors used other monuments or pipes, but upon an examination of the testimony of all of the surveyors, all seemed to have used corner or line markers that had been set by other surveyors, and endeavored to prove the correctness or incorrectness of the same, so that to the greatest extent, all of the surveys made of the properties claimed by the parties to this cause were based on assumptions of the correctness or incorrectness of markers placed by others. It should be noted that Mr. Helm, testifying for Supreme, said that the accuracy of his determination would depend upon the accuracy of other surveys, and that by moving the lines in Block 4 several lots in that block would be adversely affected. He further testified that all four houses in Block 4 are *possibly* (emphasis supplied) mislocated by twenty-three feet.

"The only testimony which might be of some significance and of some help to the Court in answering

the question before it, is the testimony of Mr. Bowen and the testimony of Mr. Jeppeson with regard to what they found to be the location of the Burley lot (Lot 42 and a part of Lot 4 in Block 12 and surveyed by Mr. Bowen), and a lot next to Burley's lot surveyed by Mr. Jeppeson. As this court understands their testimony, both of these surveyors agreed on the location of the Burley lot, even though disagreeing as to the surveyed location of the Campbell lots, although all surveyors used points in the northeast section of the subdivision in order to determine the true boundaries of the Campbell lots in Block 4, as well as the Burley lot and the lot adjacent thereto in Block 12. On that basis this Court concludes, as a fact, that the location of the Campbell lots, as established by Mr. Bowen, is correct. Supreme will therefore be enjoined from trespassing upon the complainants Campbells' land, and this matter may be referred to the law side of this court for a determination of what damages, if any, the Campbells may be entitled to. In the view of this court, however, Supreme did not act in this matter with any malice. A decree and order in accordance with this opinion will be passed when submitted."

Judge Mayfield heard the testimony of all of the witnesses and he observed their demeanor on the witness stand. He saw the places on the plats to which they pointed when they said "here" or "there." Put to it we might hesitate to say that his conclusion is correct but we are fully persuaded it is not clearly erroneous.

*Decrees affirmed. Costs in both cases to be paid by appellant.*