ESTATE OF Estella WELLS, et al., Appellants,

v.

ESTATE OF Blanche SMITH, et al., Appellees.

No. 89–136.

District of Columbia Court of Appeals.

Argued May 2, 1990.
Decided June 15, 1990.

---

Leonard L. McCants, with whom Mariea R. Cromer, Silver Spring, Md., was on the brief, for appellant.

Ruth R. Banks, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

■ This is an appeal from summary judgment in an action brought by appellee, the estate of Blanche Smith, seeking title to real property of the estate of Estella Wells by adverse possession. Our review of the grant of summary judgment is *de novo*, and we will affirm only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." [1] Since we find that a material fact is in dispute as to whether Mrs. Smith was in hostile possession of the property during the statutory period, D.C.Code § 12–301(1) (1989 Repl.),[2] ordinarily we would reverse the order granting summary judgment and remand to the trial court for further proceedings. However, a remand would be futile. The parties advise that the only persons with knowledge of the historical facts relevant to whether Mrs. Smith's possession of the property in dispute was adverse are deceased.[3] Further, they agree that the record is complete with regard to evidence concerning whether Mrs. Smith's possession of the property was hostile. Thus, the only remaining issue is one of law. Accordingly, treating the entry of summary judgment as a final judgment, we reverse since there is only one conclusion available based on the evidence in the record, namely, that Mrs. Smith failed to prove adverse possession.

I

Samuel H. and Lillian Wells owned the property at 2025 Flagler Place, N.W., as tenants by the entirety. Mr. Wells died sometime before November 1955, leaving Mrs. Wells as the sole owner. In November 1955, Mrs. Wells agreed to lease the house at 2025 Flagler Place, N.W., to Blanche Smith. For the first year of the lease agreement, Mrs. Smith paid Mrs. Wells $60.00 monthly in rent plus all the

1. *Holland v. Hannan*, 456 A.2d 807, 814 (D.C. 1983) (quoting D.C.Super.Ct.Civ.R. 56(c) and citing *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C. 1981); *Scrimgeour v. Magazine*, 429 A.2d 187, 188 (D.C.1988); *Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1382 (D.C.1979)). Generally, the mere fact that the parties to an action made cross-motions for summary judgment does not necessarily establish that there is no genuine issue of material fact in dispute, unless, in circumstances not present here, the motions are based on the same material facts and address the same legal issues. *Id.* at n. 9 (citations omitted). In determining whether an issue of fact exists, we view the evidence in the light most favorable to the party opposing the motion, *Himmelfarb v. Greenspoon*, 411 A.2d 979 (D.C.1980), taking into account the pleadings, depositions and admissions on file, together with any affidavits. *Turner v. American Motors Gen. Corp.*, 392 A.2d 1005 (D.C.1978).

2. D.C.Code § 12–301(1) (1989 Repl.) (statute of limitations for recovery of land is 15 years).

3. Mrs. Smith, who was available and provided evidence through her deposition before the trial court, has since died.

expenses for utilities and water. After the first year of the lease, the parties agreed that, in lieu of rent, Mrs. Smith would pay all expenses associated with the house and property and make all needed repairs to the property; in 1958 or 1959, Mrs. Wells asked and Mrs. Smith agreed to pay the real estate taxes as well.

Mrs. Wells died testate in 1960. Her will did not specifically mention the property at 2025 Flagler Place, N.W., but paragraph seven expressed her desire to "give, devise and bequeath all the rest, residue and remainder of [her] property and estate of any character whatsoever, whether real, personal or mixed," to her brother, Wilbert T. Jenkins, and her stepson, Francis Wells. After Mrs. Smith learned of Mrs. Wells's death, she attempted to write to Wilbert Jenkins, in September 1966, to let him know of Mrs. Wells's death, but the letter was returned because the addressee's whereabouts were unknown. In the letter, Mrs. Smith acknowledged that she was living in a house "that belongs to Samuel H. and Lillian B. Wells."

Following Mrs. Wells's death, Mrs. Smith made improvements to the house and property in addition to the regular maintenance and repairs that she had made throughout her tenancy. She converted the heating system from coal to oil by having an oil burner installed; she replaced the water heater when the original one broke; she put a fence on two sides of the house; and she replaced the porch and roof. In September 1968, Mrs. Smith began leasing the property to Hazel Brown and Cleo Davis.

In May 1985, Mrs. Smith filed a complaint to establish title by adverse possession to the property at 2025 Flagler Place, N.W. She alleged that she held title by actual, continuous, exclusive, open, notorious, hostile and adverse possession of the property for more than 29 years as evidenced by payment of the real estate mortgage, taxes, utilities, and other expenses, and the leasing of the property to non-owner tenants. The estate of Mrs. Wells filed a motion for summary judgment on the ground that there were no material facts in genuine dispute and that the record demon-strated that Mrs. Smith's possession of the property was never hostile or adverse to the true owner. Mrs. Smith filed a cross-motion for summary judgment agreeing that there were no material facts in genuine dispute, but maintaining that she was entitled to judgment because she had claimed the property as her own ever since the letter to Wilbert Jenkins was returned undelivered, and from that point, or at least for the 15–year statutory period, between May of 1970 through May of 1985, her possession of the property was hostile to the true owner, and therefore, adverse. The trial judge granted summary judgment to the estate of Mrs. Smith on the grounds that Mrs. Wells's death in 1960 resulted in the destruction of what had been a tenancy at will and left Mrs. Smith in adverse possession. The judge relied on evidence of Mrs. Smith's control reflected by the payment of the real estate taxes, the improvements made, and the rent collected.

## II

To establish title by adverse possession, a claimant must demonstrate actual, open and notorious, exclusive, continuous, and hostile possession of the premises for the prescribed statutory period. *Reid v. Anderson*, 13 App.D.C. 30, 36 (1898); *Bradshaw v. Stott*, 4 App.D.C. 527, 533 (1894). *See also Umhau v. Bazzuro*, 76 U.S.App.D.C. 394, 396, 133 F.2d 356, 358 (1942). A permissive entry upon land does not ripen into adverse possession, no matter how long actual possession continues, until the holder disavows the ownership of the landowners by unequivocal conduct. There must be proof of a claim, act or declaration of "hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile." *Lewis v. New York & H.R. Co.*, 162 N.Y. 202, 56 N.E. 540 (1900). *See Umhau v. Bazzuro, supra*, 76 U.S. App.D.C. at 395, 133 F.2d at 357; 5 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 2548 at 630 (1979 Repl.) (hereinafter THOMPSON). "Hostile," in this sense, does not necessarily imply ill will toward the owner, or even that there

may be a dispute, but means an occupant who holds as an owner and against all other claims. *Hungerford v. Hungerford,* 234 Md. 338, 442, 199 A.2d 209, 211 (1964); 5 Thompson, *supra,* § 2548 at 627; 7 R. Powell, The Law Of Real Property § 1013[2] at 91–18 (Rev. ed. 1989) (hereafter Powell). "To prove title by adverse possession, or any single element thereof, the evidence should be clear and convincing." *Horton v. Smith–Richardson Inv. Co.,* 81 Fla. 255, 259, 87 So. 905, 908 (1921). Accordingly, "title by adverse possession cannot be established by inference or implication." *Id.* Further, "[e]very presumption is in favor of a possessor in subordination to the title of the true owner." *Id.* 87 So. at 907.

██ It is undisputed that Mrs. Smith's original entry into and possession of the land was with Mrs. Wells's permission. Possession that is initially permissive can be changed to hostile possession only by the most unequivocal conduct on the part of the adverse claimant since it is presumed that permission continues and possession is not hostile. *Hungerford v. Hungerford, supra,* 199 A.2d at 211; 5 Thompson, *supra,* § 2548 at 629; 7 Powell, *supra,* § 1016 at 91–73. Thus, some jurisdictions require a tenant to surrender possession of the property to the landlord, followed by a reentry into possession by the tenant to show sufficient repudiation of a tenancy. *E.g., Wilson v. Divide County,* 76 N.W.2d 896, 902–03 (N.D.1956); *Arndt v. Ball,* 335 Mich. 595, 599, 56 N.W.2d 394, 396 (1953). Evidence of the occupant's recognition of a superior title can be fatal. Thus in *Hungerford v. Hungerford, supra,* the owners had repeatedly refused the claimant's requests to execute a deed in the claimant's favor and the court viewed the claimant as having always recognized that the owner had legal title. 199 A.2d at 211. So, too, Mrs. Smith's letter to Mr. Jenkins indicated her own subordinate attitude regarding who owned the property.

██ On the other hand, when the claim of right is in some way asserted so that the owner knows of the claim, possession can become adverse. *Chaconas v. Meyers,* 465 A.2d 379, 383 (D.C.1983); *Connot v. Bowden,* 189 Neb. 97, 200 N.W.2d 126, 129–130 (1972); 5 Thompson, *supra,* § 2548 at 630. In *Stark v. Akard,* 313 P.2d 790, 793 (Okla. 1957), the claimant purchased the property at a voidable tax sale, received and recorded a deed of title, and thereafter paid taxes on the property for the requisite period of years to establish ownership, and the court held that claimant's evidence conclusively established possession under a claim of ownership. *Id.*

██ In the absence of actual notice to the owner, the tenant's acts of ownership must be of such an open, notorious, and hostile character that the owner can be deemed to have known of it. For example, in *Adams v. Johnson,* the Supreme Court of Minnesota held that a cotenant who occupied land undisturbed for fifty years as a sole owner, paid all taxes and insurance, and retained all of the profits from farming operations as well as made substantial improvements to the farm, overcame the presumption that one cotenant holds land with the implicit permission of others. 271 Minn. 439, 136 N.W.2d 78 (1965). Similarly, in *Johnson v. James,* the Supreme Court of Arkansas held that where one cotenant has lived on and had sole and exclusive possession of the property in question for thirty-six years, exercising such acts of ownership as payment of taxes, enjoyment of rents, payment of insurance made payable to him, together with possession of an unprobated will giving him the property, about which the non-claiming cotenant was aware, and where the non-claiming cotenant never asserted any claim to the property until it was acquired by eminent domain proceedings, the claimant successfully asserted a claim of adverse possession. 237 Ark. 900, 377 S.W.2d 44, 47 (1964). *See also Holtzman v. Douglas,* 168 U.S. 278, 283, 18 S.Ct. 65, 67, 42 L.Ed. 466 (1897) (requiring that adverse possession be brought home to true owner); *Root v. Woolworth,* 150 U.S. 401, 415, 14 S.Ct. 136, 140, 37 L.Ed. 1123 (1893) (same); *Zeller's Lessee v. Eckert,* 45 U.S. 289, 296, 11 L.Ed. 979 (1846) (same). There is, however, no general rule as to the na-

ture of the tenant's disclaimer of the owner's title and adverse holding [4] and acts of ownership such as the payment of taxes when performed in a slightly different context, while tending to support a claim of possession, do not in themselves work a divestiture of title. *E.g., Elliott v. Moffett,* 365 Pa. 247, 252, 74 A.2d 164, 167 (1950); *see* 3 AM.JUR.2d. *Adverse Possession* § 222 (1986).

The claim of hostile possession by the estate of Mrs. Smith is based on the fact of the death of Mrs. Wells. This alone is not a clear, unequivocal and notorious disclaimer of the title of the true owner sufficient to change the character of possession originally obtained by permission. *See Holtzman v. Douglas, supra,* 168 U.S. at 283, 18 S.Ct. at 67; *Bender v. James,* 212 Neb. 77, 321 N.W.2d 436, 439 (1982); *Hinkley v. State,* 234 N.Y. 309, 137 N.E. 599, 601–02 (1922); 3 AM.JUR., *supra,* § 53. Even if we assume that Mrs. Smith possessed the land pursuant to a tenancy at will which expired with the death of the landlord, *see Radigan v. Hughes,* 86 Conn. 536, 86 A. 220, 222 (1913); 3 THOMPSON, *supra,* § 1022, at 52 (1980 Repl.), rather than becoming an adverse possessor, Mrs. Smith became, by operation of law, a tenant at sufferance upon Mrs. Wells's death in the absence of such hostile possession as is required to assert a claim by adverse possession. *See Hampton v. Mott Motors, Inc.,* 32 A.2d 247, 248 (D.C.1943) (tenant by sufferance upon holding over after expiration of lease), 3 THOMPSON, *supra,* § 1023, at 57–60 (same); 7 POWELL, *supra,* § 1016 at 91–74 (same); D.C.Code § 45–220 (1989 Repl.). Not only will the statute of limitations not run against the right of the owner to recover possession of the premises in favor of a tenant at sufferance, 3 THOMPSON, *supra,* § 1023, at 59; 7 POWELL, *supra,* § 1016 at 91–74, where a tenant holds over, there is an implied continuation of all the terms of the previous agreement, including covenants to maintain. *Hampton v. Mott Motors, supra,* 32 A.2d at 248; *City of New York v. Pennsylvania Railroad,* 37 N.Y.2d 298, 372 N.Y.S.2d 56, 333 N.E.2d 361, 362 (1975); 3 THOMPSON, *supra,* § 1023 at 59. Accordingly, the death of the owner, by itself was not sufficient to start the running of the statute of limitations.

Reliance by the estate of Mrs. Smith on instances where Mrs. Smith's allegedly hostile possession was asserted are equally unavailing. The estate asserts that after Mrs. Wells died, she paid the outstanding mortgage, taxes and utility expenses, made significant repairs and replaced the oil burner and porch, and leased the property to other nonowners and collected rent. Mrs. Smith alleges that she made mortgage payments, in particular the final mortgage payment (about $232) sometime between 1968 and 1971, but the record shows only that she paid interest and recording charges of about $43. While her other acts are consistent with factual manifestations of claimed ownership, and in some circumstances, might reflect a claim of right to a reasonably attentive owner,[5] they are equally consistent with the lease agreement between Mrs. Wells and Mrs. Smith. In addition to the ambiguous nature of Mrs. Smith's actions, other evidence indicates that her actions were not necessarily consistent with a claim of ownership hostile to Mrs. Wells. For example, all permits for work done on the property were taken out in Mrs. Wells's (or her deceased husband's) name. Similarly, the tax bills for the property continued to be in

---

4. *See Horton v. Smith–Richardson Inv. Co., supra,* 87 Fla. at 259, 87 So. at 908.

5. *See Aleotti v. Whitaker Bros. Business Machines, Inc.,* 427 A.2d 919, 921 (D.C.1981) (determination of adversity focuses essentially on factual manifestations of claimed ownership reflecting a claim of right to a reasonably attentive owner). *See generally Elliott v. Moffett, supra,* 365 Pa. at 252, 74 A.2d at 167 (assessment and payment of taxes are circumstances admissible as tending to support claim of possession, but they do not in themselves work a divestiture of title); *Missouri P.R. Co. v. Bozeman,* 178 Ark. 902, 12 S.W.2d 895, 896 (1929) (possession of another tenant under the tenant claiming adverse possession is generally regarded as subservient and not adverse to the landlord); *Carson v. Broady,* 56 Neb. 648, 77 N.W. 80 (1898) (mere fact that a tenant remains in possession after the lease expired insufficient to show adverse possession).

the name of Mrs. Wells and her deceased husband. In addition, the record supports a finding that Mrs. Smith was actually "sub-leasing" the property as a subservient possessor to the true owner.

Further, Mrs. Smith has never made any attempt to give actual notice to the true owners that she claimed the land adversely. Her letter sent to Mr. Jenkins acknowledged that she considered herself subservient to Mrs. Wells or her estate. After the letter was returned, Mrs. Smith made no further efforts to notify either Mr. Jenkins or Francis Wells, who was also named in Mrs. Wells's will as a devisee of the property, of her continued possession of the property or that she claimed it adversely.

Because none of Mrs. Smith's action with regard to the property was clearly inconsistent with the oral lease permitting her to live on the property, there was no constructive notice to the true owners of a change in the nature of Mrs. Smith's tenancy. Any coincidence between Mrs. Smith's acts of ownership over the property which were hostile to the true owner and the terms of the lease works to her detriment since she has the burden to show by clear and convincing evidence that her possession was hostile rather than subservient and that she asserted the hostile nature of her possession in such a manner that the owner should be deemed to have known of the claim. *Chaconas v. Meyers, supra,* 465 A.2d at 383; *Horton v. Smith–Richardson Inv. Co., supra,* 81 Fla. at 259, 87 So. at 908.

Accordingly, because the record does not clearly demonstrate that Mrs. Smith's possession of the property was sufficiently hostile throughout the statutory period as to have put the true owner on notice of Mrs. Smith's adverse claim, we reverse.

*So ordered.*